No. 14744

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

STATE OF MONTANA,

                 Plaintiff and Appellant,

    -vs-

RICHARD HELFRICH,

                 Defendant and Respondent.

Appeal from:  District Court of the Eighteenth Judicial District,
              Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

    For Appellant:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Donald White, County Attorney, Bozeman, Montana
        Gregory R. Todd argued, Deputy County Attorney,
         Bozeman, Montana

    For Respondent:

        Goetz and Madden, Bozeman, Montana
        James H. Goetz argued, Bozeman, Montana

                      Submitted:  September 12, 1979

                         Decided:  OCT 3 1979

Filed:  OCT 3 1979

_Thomas J. Kearney_
                         Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

The State of Montana appeals from an order of the Gallatin District Court granting defendant's motion to suppress all evidence resulting from an illegal search and seizure.

On July 25, 1978, Mildred Arnold telephoned the Gallatin County Sheriff's Office. She informed the answering office that she observed what she thought was a number of marijuana plants growing in the yard of her neighbor, Richard Helfrich, in Willow Creek, Montana. A deputy was dispatched to investigate the matter. The yard was fenced and contained a "lush" garden, including tall sunflowers. After investigating and seeing no marijuana, the deputy closed the case.

On July 31, 1978, Arnold entered Helfrich's garden and took a sample of a leafy material. The next day, August 1, 1978, she took a sample to the Gallatin County Sheriff's Office where it was field tested positive for THC, the active ingredient in marijuana.

Later that same day, Gallatin County Sheriff officers went into the alley behind the Helfrich property, looked over the fence of the defendant and claimed to have spotted and subsequently photographed marijuana plants growing within a second enclosure constructed of wood and chicken wire.

On these facts, the officers obtained a search warrant from the Justice of the Peace. On August 3, 1978, the officers went to the Helfrich household and served the warrant on Helfrich's wife. As a result, a quantity of plant material alleged to be marijuana was pulled from the garden.

An information was filed on August 21, 1978, charging Helfrich with criminal sale of dangerous drugs. A suppression

-2-

hearing was held on November 22, 1978. The District Court, by an order entered on December 4, 1978, suppressed all evidence oral and tangible, direct and indirect, resulting from the search and seizure. The court based its suppression order on faulty probable cause stemming from the illegal actions of Arnold. We affirm.

The State presents three issues for our review:

1. Whether the evidence must be suppressed according to current constitutional authority?

2. Does the exclusionary rule apply to cases in which evidence is illegally seized by a private person?

3. Was Mildred Arnold a constructive agent of the Gallatin County Sheriff's Office?

The 1972 Mont. Const., Art. II, §11, states in pertinent part:

> ". . . No warrant to search any place, or seize any person or thing shall issue . . . without probable cause . . ."

Section 46-5-202, MCA, states:

> "Grounds for search warrant. Any judge may issue a search warrant upon the written application of any person, made under oath or affirmation before the judge, which:
>
> ". . .
>
> "(2) states facts sufficient to show probable cause for issuance of the warrant;"

State law requires that the decision as to the existence of probable cause be made on the basis of sufficient competent facts. According to the record, the application for a search warrant was premised on two factors: (1) photographs taken from the roadway abutting the respondent's property by a Gallatin County Sheriff's detective and (2) a sample of marijuana illegally obtained by an inquisitive neighbor.

No trace of marijuana was reported by the first officer who personally surveyed the area on July 25, 1978. In fact, the opposite conclusion was reached as is exemplified by the

-3-

initial closure of the case. It is virtually impossible by careful scrutiny of the photographs alone to either locate, or identify any substance which would give credibility to the existance of marijuana. Only the sample from Mrs. Arnold affords any basis to support the allegation of the existence of marijuana on the Helfrich property.

The sample obtained by respondent's curious neighbor was obtained by means of illegal trespass upon the Helfrich property. As a result, the sample was tainted as being the fruit of an illegal invasion of respondent's right of privacy. Since the application and subsequent issuance of the search warrant were based in fact, solely on an illegally obtained sample, the issuance of the search warrant and the subsequent search itself were both improper and illegal. The evidence was properly suppressed by the District Court.

The State relies upon the rule enunciated in Burdeau v. McDowell (1921), 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048. That decision held illegally obtained evidence admissible under the Fourth Amendment when seized by a non-governmental agent who is not acting in concert with any governmental agency. We find the Montana Constitution affords an individual greater, explicit protection in this instance than is offered in the Fourth Amendment decision of the Burdeau Court. The 1972 Mont. Const., Art. II, §§ 10 and 11 provide:

"Section 10. Right of privacy. The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest.

"Section 11. Searches and seizures. The people shall be secure in their persons, papers, homes and effects from unreasonable searches and seizures. No warrant to search any place, or seize any person or thing shall issue without describing the place to be

-4-

searched or the person or thing to be
seized, or without probable cause, supported
by oath or affirmation reduced to writing."

The importance of the right of individual privacy
to the framers of the Montana Constitution is obvious from
these provisions and the transcript of the Montana Con-
stitutional Convention. Transcript of Proceedings, Vol.
VII, pp. 5179-5205 (1972). This Court has previously noted
the significance of the explicit guarantee of the right to
individual privacy contained in section 10, as no comparable
provision exists in the United States Constitution. State
v. Sawyer (1977), ____ Mont. ____, 571 P.2d 1131, 1133, 34
St.Rep. 1441, 1444; State v. Coburn (1974), 165 Mont. 488,
495, 530 P.2d 442, 446.

The framers of the 1972 Constitution indicated the
right of individual privacy was significant whatever the
source of the invasion. The delegate who introduced the
proposed privacy section reflected these concerns:

> ". . . Certainly, back in 1776, 1789, when they
> developed our bill of rights, the search and
> seizure provisions were enough, when a man's
> home was his castle and the state could not
> intrude upon this home without the procuring
> of a search warrant with probable cause being
> stated before a magistrate and a search
> warrant being issued. No other protection
> was necessary and this certainly was the greatest
> amount of protection that any free society has
> given its individuals. In that type of a
> society, of course, the neighbor was maybe
> three or four miles away. There was no real
> infringement upon the individual and his right
> of privacy. However, today we have observed
> an increasingly complex society and we know
> our area of privacy has decreased, decreased
> and decreased . . ." Tr. of the Montana Con-
> stitutional Convention, Vol. VII, pp. 5180-81.

Later in the same statement, the scope of the delegates'
concern was addressed:

> ". . . It isn't only a careless government that
> has this power to pry, political organizations,
> private information gathering firms, and even
> an individual can now snoop more easily and
> more effectively than ever before . . ." Tr.
> at p. 5182.

-5-

A search and seizure such as the one executed by Mrs. Arnold amounts to a significant invasion of individual privacy. In State v. Brecht (1971), 157 Mont. 264, 485 P.2d 47, this Court held that the admission by the District Court of evidence gained by means of eavesdropping on a telephone conversation was reversible error because the defendant's Constitutional right of privacy has been violated via the Fourth Amendment under the Federal Constitution as applied to State criminal court proceedings by the "due process" clause of the Fourteenth Amendment. This Court also stated the eavesdropping "equally" violated the defendant's rights under 1889 Mont. Const., Art. III, §7. (Emphasis added.) The 1972 Montana Constitution is more explicit in regards to such rights.

The State in the present case, as it did in Brecht contends the privacy protection is afforded only against law enforcement officers and not against violations by private citizens. In Brecht, we refuted this argument:

> ". . . The violation of the constitutional right to privacy and against compulsory self-incrimination is as detrimental to the person to whom the protection is guaranteed in the one case as in the other. To distinguish between classes of violators is tantamount to distinction of the right itself . . ." (Emphasis added.) Brecht, 157 Mont. at 270, 485 P.2d at 51.

In the same case, we recognized the appropriateness of the exclusion of illegally obtained evidence in such cases:

> "This Court in the present case would be remiss were it not to recognize that evidence obtained by the unlawful or unreasonable invasion of several of the constitutionally protected rights guaranteed to its citizens by both the federal and Montana constitutions properly comes within the contemplation of this Court's exclusionary rule. To do otherwise would lend Court approval to a fictional distinction between classes of citizens: those who are bound to respect the Constitution and those who are not. Were the exclusionary rule to recognize

-6-

such distinctions it would by indirection circumvent the rule established by this Court to enforce these rights and would in fact render the rule and the constitutional guarantees it protects meaningless." Brecht, 157 Mont. at p. 271, 485 P.2d at p. 51.

The Brecht holding was affirmed in Coburn, supra. We again affirm and thereby hold that the right of individual privacy explicitly guaranteed by the State Constitution is inviolate and the search and seizure provisions of Montana law apply to private individuals as well as law enforcement officers. Evidence obtained through illegal invasions of individual privacy are not to be admitted into evidence in a court of law of this State.

Because the search of the Helfrich property was based upon the fruit of an unlawful trespass, the District Court acted properly in suppressing the evidence and granting the defendant's motion to dismiss. Since the first issue is dispositive of this case, we will not address the remaining issues.

The order of the District Court is affirmed.

_____
                    Justice

We Concur:

_____
        Chief Justice

_____

_____

_____
        Justices

Mr. Justice John Conway Harrison dissenting:

I respectfully dissent. While I recognize that both the _Coburn_ case and the _Brecht_ case have been part of our case law for several years and that at least one legislature has had the opportunity to change the law established in these opinions, I feel now, as I did when I dissented to those opinions, that we were establishing bad law.

Here, we have a private citizen, who in no way can be considered an agent of the State, turning over evidence to the State that she had procured in an assumed trespass on her neighbors' property. She had no other interest than to enforce the law, and her act of turning over the evidence to the sheriff's office is different from that of Hillis in the _Coburn_ case, where Hillis had a previous agreement with the police to get the evidence from his employee's pocket. I believe under the facts here _Coburn_ is clearly distinguishable.

Prior to _Brecht_ and _Coburn_ the purpose of the exclusionary rule was to guarantee that the State and its authorized representatives would observe an individual's constitutional rights. The rule was to protect the individual from illegal police activity. It did not encompass illegal searches by private individuals; its basic purpose, as stated above, was to deter police activity and thereby guarantee the purity of the judicial process. Once we extend the exclusionary rule to private persons, as we are doing here, said extensions can and will extend the rule beyond any logical purpose. For these reasons I would reverse the District Court's order of suppression and send the case to trial.

John Conway Harrison
Justice

-8-