MR. JUSTICE MORRISON
dissenting:
I respectfully dissent from the majority opinion.
The facts of this case do not form the basis for this dissent. Rather the purpose is to reexamine State v. Brecht (1971), 157 Mont. 264, 485 P.2d 47; State v. Helfrich (1979), 183 Mont. 484, 600 P.2d 816, 36 St.Rep. 1763, and the rationale expressed by the majority in the case at bar.
In Brecht and Helfrich this Court held that the Montana constitution’s sections on privacy and unreasonable search and seizure address private action as well as state action. The court further held that the exclusionary rule is automatically applied if a constitutional right is invaded. These two holdings are followed in the instant case.
A careful reading of these three decisions discloses a lack of rationale supporting a radical departure from precedent established by every other appellate court. Montana is the only jurisdiction to my knowledge which has extended either “search and seizure” or *65 “privacy” provisions to private action. Additionally we are the only court which has applied the exclusionary rule to private action.
In my opinion there are two issues which should be addressed in this case: (1) Does Article 2, § 10, of the Montana Constitution providing for the right of privacy, or Article 2, § 11, of the Montana Constitution providing for the security from unreasonable search and seizure, apply to individual action as opposed to state action? (2) Should the exclusionary rule be applied to suppress evidence obtained by an individual where that individual does not act in concert with agents of the state? I would hold that the constitutional provisions referred to herein, contemplate state action only. I would further hold that the exclusionary rule does not apply to private action.
Montana is one of only ten states to have an express provision for privacy in the state constitution. As mentioned previously, none of these states have held the privacy protections to be applicable to acts of private persons. Arizona has directly held that the privacy prohibition applies only to state action. Cluff v. Farmers Insurance Exchange (1969), 10 Ariz.App. 560, 460 P.2d 666, 669. Alaska has limited its application to state activities. See e. g., Allred v. State (1976) 554 P.2d 411, 416; Falcon v. Alaska Public Offices Com’n (1977), 570 P.2d 469, 476.
Montana first extended privacy rights to private action in State v. Brecht, supra. In that case a man telephoned his wife and threatened to shoot her. Another person, listening in on an extension, overheard the conversation. When the wife was shot and killed a short time later, the District Court allowed the eavesdropper to testify regarding what she overheard. This Court reversed holding that Brecht’s right of privacy was protected from an invasion from a private individual. The court cited Katz v. United States (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, as support for its holding. However, Katz involves government action, not private action and provides no support for this Court’s position in Brecht.
*66 In State v. Helfrich, supra, the court followed the holding of Brecht, but expanded the discussion. The court relied upon transcripts from the constitutional convention in concluding that the framers of the constitution intended for the right of privacy to protect persons against both private and government action. The court cited the following transcript quotations:
“. . . Certainly, back in 1776, 1789, when they developed our Bill of Rights, the search and seizure provisions were enough, when a man’s home was his castle and the state could not intrude upon his home without the procuring of a search warrant with probable cause being stated before a magistrate and a search warrant being issued. No other protection was necessary and this certainly was the greatest amount of protection that any free society has.given its individuals. In that type of a society, of course, the neighbor was maybe three or four miles away. There was no real infringement upon the individual and his right of privacy. However, today we have observed an increasingly complex society and we know our area of privacy has decreased, decreased, and decreased . . . Tr. of the Montana Constitutional Convention, Vo. VII, pp. 5180-81.
“ ‘. . . It isn’t only a careless government that has this power to pry, political organizations, private information gathering firms, and even an individual can now snoop more easily and more effectively than ever before . . .’ Tr. at pp. 5182.” Helfrich, 600 P.2d 818, 37 St.Rep. 1766.
The second quotation actually resulted from a delegate reading from a newspaper editorial which supported an expanded right of privacy. However, the balance of the delegate’s statement is very significant. It reads:
“It produces what I would call a semi permeable wall of separation between individuals and state; just as the wall of separation between church and state is absolute, the wall of separation we are proposing with this section would be semi permeable. That is, as a participating member of society we all recognize that the state must come into our private lives at some point, but what it says is don’t come into our private lives unless you have a good reason for *67 being there. We feel that this, as a mandate to our government, would cause a complete reexamination and guarantee our individual citizens of Montana this very important right.” (Emphasis supplied.) Tr. at pp. 5181.
In my opinion, the majority can find little solace from reading the Constitutional Convention Transcript. When talking about the privacy section, state action rather than private action, is emphasized. Furthermore, the privacy section, Article 2, §10, specifically states: “The right of individual privacy is essential to the well being of a free society and shall not be infringed without the showing of a compelling state interest.” (Emphasis supplied.) The language of the section itself indicates that the framers contemplated state action by allowing an invasion where there was a compelling state interest.
Historically constitutions have always been a means for people to address their government. In rare instances the constitutional framework has embraced sections specifically speaking to private persons. Article II, § 4, of the Montana Constitution provides in part: “. . : Neither the state nor any person, firm, corporation, or institution shall discriminate against any person ...” (Emphasis supplied.) Notably the privacy section does not address private individuals.
By interpreting Montana’s constitutional right of privacy as a prohibition against private, as well as state action, this Court has set itself foursquare against the position of the courts of all other states, and in my opinion, against the intention of the framers of Montana’s constitution.
The second issue which must be addressed is application of the exclusionary rule. It is apparent to me that the majority has elevated the exclusionary rule to constitutional status. This conclusion seems inescapable in the light of its automatic application in Brecht, Helfrich, and this case. As the majority here states: “It is paste and cover for the bones of our constitutional rights . . .” Nevertheless there seems to be confusion on this point as the legislature continues to pass legislation, though vetoed, abolishing *68 the exclusionary rule and providing a “deterent” alternative. Under the current posture of Montana constitutional law such legislation is patently unconstitutional.
The exclusionary rule was first enunciated in Weeks v. United States (1914), 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652. The rule was evidentiary in nature and not deemed to be rooted in the constitution itself.
In Burdeau v. McDowell (1921), 256 U.S. 465, S.Ct. 574, 65 L.Ed. 1048, the Supreme Court of the United States limited application of the exclusionary rule to acts of the sovereign. Therefore, evidence procured by a private person was not subject to exclusion even if obtained in an unreasonable search.
Justification for the exclusionary rule arises from a desire to deter unlawful police action. The rule has only minimal deterrent value when applied to private persons. If the rule is to have a deterrent effect, potential violators must be aware of the rule. It is doubtful that private individuals in our society understand and appreciate the exclusionary rule, and there is little evidence that application of the exclusionary rule to private violators would reduce the number of violations.
Automatic application of the exclusionary rule certainly cannot be justified on the basis of repairing a constitutional harm. The effect of applying the rule offers no reparation in the case of an unreasonable search and seizure yielding no criminal evidence. The rule’s remedy is limited to those who have committed a crime, thereby denying reparation to all others.
The exclusionary rule is a valuable tool in deterring unreasonable police action. In private action cases the purpose wanes.
I would hold, in this case, the skis which were seized, were the fruit of private action and therefore not subject to suppression. I would reverse the District Court and remand this case for trial.
MR. JUSTICES WEBER and HARRISON concur with the foregoing dissent.