# THE STATE OF MONTANA, Petitioner,
# v.
# ROBERT C. SYKES, Respondent.

No. 83-86.
194 Mont. 14.
Decided May 12, 1983.
663 P.2d 691.

Thomas A. Bostock, Deputy County Attorney, Libby for petitioner.

## ORDER

# PER CURIAM:

The State of Montana applied to this Court for a writ of supervisory control to review a District Court order entered on February 4, 1983, compelling the State to disclose the name of a confidential, reliable informant.

On August 17, 1982, Lincoln County sheriff's officers executed a search warrant upon the residence of defendant Calvin Paul St. Onge. The warrant was issued based upon an affidavit stating that the affiant officer had gained information from a confidential and reliable informant who had informed the officer that "within the last twenty-four (24) hours he saw ½ pound of columbian-type marijuana in a large paper bag which contained numerous sandwich-type baggies of marijuana ... in the back bedroom of the ... trailer house ... occupied by Paul St. Onge." A quantity of marijuana was discovered and defendant was charged with felony cultivation of marijuana or, in the alternative, felony possession of marijuana.

Defendant filed motions to quash the search warrant, to produce the name of the confidential, reliable informant referred to in the application for the search warrant, and to dismiss. These motions were supported by an affidavit signed by defendant's wife which stated:

"That I am usually home all day in the absence of my husband, because we have three small children and I have the primary responsibility for child care in our family.

"That for the 24 hours preceding the search of our house on August 17, 1982, and during the 16th and 17th of August, 1982, there were no persons in our residence not known to us, and no person likely to have seen the marijuana alleged to have been in possession of the Defendant on the 16th or 17th of August, as set forth in the Affidavit and Application for Search Warrant ...

"That on the 16th and 17th my husband, the Defendant, had our vehicle during such times as he was at work and because of that, I was home during the times when he was present."

Based upon the foregoing affidavit, defendant argues four possible grounds on which the name of the confidential, reliable informant must be revealed in order to allow defendant to prepare his case: (1) an illegal entry by the informant; (2) falsity of matters alleged in the affidavit; (3) use of information provided by an informant with an apparent on-going relationship with Lincoln County deputy sheriffs constituting a prohibited use of "silver platter" evidence; and (4) that the arrest was without probable cause. (Defendant concedes that his third argument is unnecessary in light of this Court's application of the exclusionary rule to the actions of private citizens.)

The sheriff's detective subsequently filed a second affidavit that indicated he had been told by the informant that the informant had been invited into the defendants residence at the time he had seen the marijuana. The District Court heard argument on defendant's motions and subsequently ordered disclosure of the informant's name. We disagree and now vacate that order and remand this cause to the District Court for further proceedings consistent with this order. Defendant's claims are mere conjecture.

This situation presents conflicting interests which must be balanced: the State's interest in protecting informant confidentiality and the due process rights of the accused. Defendant would have us take into consideration only his alleged rights. Defendant premises his stance upon this Court's holding in *State v. Van Haele* (1982), [199 Mont. 523,], 649 P.2d 1311, 39 St.Rep. 1586. In *Van Haele* we again held that "evidence obtained by a private citizen in violation of another's constitutional rights is subject to the exclusionary rule" and is therefore not admissible at criminal trial against the defendant. 649 P.2d at 1313, 39 St.Rep. at 1588. See also, *State v. Hyem* (1981),193 Mont. 51, 630 P.2d 202, 38 St.Rep. 891; *State v. Helfrich* (1979), 183 Mont. 484, 600 P.2d 816; *State v. Coburn* (1974), 165 Mont. 488, 530 P.2d 442; *State v. Brecht* (1971), 157 Mont. 264, 485 P.2d 47. Defendant asks us to use *Van Haele* as the basis for ordering disclosure of the informant's name, alleging that such a constitutional violation *may have occurred. We decline to do so.*

Montana has clearly recognized the existence of the rule of privilege for the identity of an informer. *State ex rel. Offerdahl v. District Court* (1971), 156 Mont. 432, 436, 481 P.2d 338, 341; *State v. Hull* (1971), 158 Mont. 6, 17, 487 P.2d 1314, 1320. The rule was

codified in Rule 502, Mont.R.Evid., and allows the government entity "to refuse to disclose the identity of a person who has furnished information" that relates to investigation of a possible crime. The Commission Comments to Rule 502 indicate that the rule was specifically adopted since, being based solely on case law, it could not be incorporated by reference. into Rule 501: The Comments state: "The Commission believes that this privilege is a necessary part of effective law enforcement ... and ... therefore has adopted it." We agree.

Rule 502 adopts the balancing test set forth in *Roviaro v. United States* (1957), 353 U.S. 53, 62, 77 S.Ct. 623, 628-629, 1 L.Ed.2d 639, 646. It allows voluntary disclosure by the informer, by others, or where the informant appears as a witness. A second exception to nondisclosure states:

"(b) If it appears in the case that an informer may be able to give testimony relevant to any issue in a criminal case or to a fair determination of a material issue on the merits in a civil case to which a public entity is a party, and the public invokes the privilege, the court shall give the public entity an opportunity to show facts relevant to determining whether the informer can, in fact, supply that testimony."

In *Roviaro,* a warrantless arrest was conducted based upon information and contraband received from the unnamed informant. Testimony of the informant, who was actively involved in the transaction that served as a basis for Roviaro's charge, was highly relevant and may have been helpful to the defense.

The Court also recognized that the "informer's privilege" is actually the government's privilege to withhold the identity of an informer and stated:

"... The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the *obligation* of citizens to communicate their knowledge of the commission of crimes to law enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." (Emphasis added.) 353 U.S. at 59, 77 S.Ct. at 627, 1 L.Ed.2d at 644.

See also, *In re Quarles and Butte* (1895), 158 U.S. 532, 15 S.Ct. 959, 39 L.Ed. 1080; *Vogel v. Gruaz* (1884), 110 U.S. 311 , 4 S.Ct. 12, 28 L.Ed. 158. It refused to impose an absolute rule requiring disclosure and instead applied it only where disclosure would be relevant and helpful to the defense or would be essential to a fair determination of the cause.

Since *Roviaro,* the United States Supreme Court has recognized the danger of requiring disclosure. *McCray v. Illinois* (1967), 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62. In *McCray,* the Court reviewed the function of the privilege in detail, stating:

Communications of this kind ought to receive encouragement. They are discouraged if the informer's identity is disclosed. Whether an informer is motivated by good citizenship, promise of leniency or prospect of pecuniary reward, he will usually condition his cooperation on an assurance of anonymity — to protect himself and his family from harm, to preclude adverse social reactions and to avoid the risk of defamation or malicious prosecution actions against him. The government also has an interest in nondisclosure of the identity of its informers. Law enforcement officers often depend upon such persons ends their usefulness to the government and discourages others from entering into a like relationship.

" 'That the government has this privilege is well established, and its soundness cannot be questioned.' (Footnotes omitted.) 8 *Wigmore, Evidence* § 2374 (McNaughton Rev. 1961)." 386 U.S. at 308- 309, 87 S.Ct. at 1061, 18 L.Ed.2d at 69.

The Court then distinguished *Roviaro* on the basis of the "material part" the informant had in bringing about the defendant's possession of the drugs and acknowledged the informant's active participation in the events leading to an indictment charging sale and transportation of narcotics. Here, defendant misconstrues Justice Sheehy's concurring comments in *Van Haele* to suggest that the privilege should be limited since the "citizen" the privilege is supposed to protect are most often co-conspirators or co-criminals who turn to law enforcement officers for their own purposes or rewards. *Van Haele,* 649 P.2d at 1316, 39 St.Rep. at 1592-1593. We reject that argument.

In *McCray,* the Court contrasted the actual trial of a criminal charge with the necessity to establish probable cause in an application for a warrant and pointed out that in the latter the magistrate is concerned not with whether an informant lied but with whether the affiant is truthful in his recitation of what he is told. The Court concluded:

" 'If a defendant may insist upon disclosure of the informant in order to test the truth of the officer's statement that there is an informant or as to what the informant related or as to the informant's reliability, we can be sure that every defendant will demand disclosure. *He has nothing to lose and the prize may be the suppression of damaging evidence* if the State cannot afford to reveal its source,

as is so often the case. And since there is *no way to test the good faith of a defendant who presses the demand, we must assume the routine demand would have to be routinely granted.* The result would be that the State could use the informant's information only as a lead and could search only if it could gather adequate evidence of probable cause apart from the informant's data. Perhaps that approach would sharpen investigatorial techniques, but we doubt that there would be enough talent and time to cope with crime upon that basis. Rather we accept the premise that the informer is a vital part of society's defensive arsenal. The basic rule protecting his identity rests upon that belief.' (Citations omitted.)" 386 U.S. at 306-307, 87 S.Ct. at 1060, 18 L.Ed.2d at 68. (Emphasis added.)

We agree that allowing such a routine challenge as that presented by defendant would hamstring the effective operation of law enforcement agencies.

In the instant case, the State made an additional showing pursuant to Rule 502(b), Mont.R.Evid., in the form of the second affidavit that the informant's presence in defendant's home was by invitation and was therefore lawful. Defendant presents only a general challenge to the affidavits with no showing that the statements contained within them are in fact false.

The United States Supreme Court has recognized that there "is a presumption of validity with respect to the affidavit supporting the search warrant." *Franks v. Delaware* (1978), 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667, 682. Where the affidavits contain factual inaccuracies that do not go to the integrity of the affidavit because they are of only peripheral relevance to the showing of probable cause, the search warrant remains valid. Hearsay may be the basis for a warrant. *Rugendorf v. United States* (1964), 376 U.S. 528, 532, 84 S.Ct. 825, 828, 11 L.Ed.2d 887, 891.

In *Franks* the Court established a procedure for challenging the validity of an affidavit on the bases of deliberate falsehood or of reckless disregard for the truth. This Court has also vacated warrants based upon such erroneous information. *State v. Nanoff* (1972), 160 Mont. 344, 502 P.2d 1138. We adopt the *Franks* procedure for the instant case.

First, a defendant must make a substantial preliminary showing that his rights have been violated. Here, defendant must make a substantial preliminary showing that an illegal entry occurred in fact, that matters alleged in the affidavit were false, or that no probable cause for arrest existed.

Defendant's affidavit is insufficient to constitute such a showing in any of these areas. It simply alleges that there "were no persons in [his] residence not known" to him and that it would have been "unlikely" that anyone would have seen the contraband. Those statements do not preclude the possibility that a person known to defendant was in fact in his residence by invitation, saw the contraband, and reported that fact to the authorities.

Should a defendant make such a substantial preliminary showing, it then mandates an examination of the affidavit to determine if sufficient information remains after excising the challenged material to support a finding of probable cause. If so, no hearing is required. If the remaining content is insufficient, defendant is entitled to an evidentiary hearing.

Finally, at the evidentiary hearing defendant must establish by a preponderance of the evidence that the affidavit was based upon an illegal entry, false information or insufficient probable cause. Then, that evidence will be suppressed. Defendant is not entitled to disclosure of the informant's identity until he has made a substantial preliminary showing that the entry was in fact illegal or the information was false. Here, he has not made such a showing.

We vacate the order of the District Court and remand for further proceedings consistent with this order.

DATED this 12th day of May, 1983.

s/ Frank I. Haswell, Chief Justice
s/ John Conway Harrison, Justice
s/ John C. Sheehy, Justice
s/ Fred J. Weber, Justice

JUSTICE GULBRANDSON, concurring part and dissenting in part.

I concur with the result expressed in the foregoing opinion, but to the extent that said opinion affirms *State v. Van Haele* (1982), 199 Mont. 523, 649 P.2d 1311, I respectfully dissent.

JUSTICES MORRISON and SHEA would deny the supervisory control.