MR. JUSTICE MORRISON
delivered the Opinion of the Court.
The State of Montana appeals an order of the Honorable Diane Barz, Judge of the Thirteenth Judicial District, Yellowstone County, granting defendant’s motion to suppress. We reverse and remand.
Defendants, Charles and Vicki Long, at the time of the charged offense, were renters of a house in Huntley, Montana. The owner of the house, Millard Hultgren, lived next door. There was no written rental agreement between the parties. The landlord believed he had a right to enter his rental property at will. However, conflicting testimony was presented on whether the tenants ever consented to such an arrangement. The tenant Charles Long testified that there was no such agreement.
A sudden increase in the electricity bill for the rental house, a landlord obligation under the oral tenancy, caused concern. In the evenings, Hultgren noticed a light burning in the attic. On August 4, 1983, he entered, when the defendants were not home, and went to the attic where he discovered a “grow light” shining on what was later determined to be 657 marijuana plants. Hultgren’s status at this point was a fact question. The District Court’s finding that he was a trespasser is supported in the record.
*67 The Yellowstone County Sheriffs Office was notified and an application made for a search warrant. Subsequently, the warrant was issued and the marijuana plants seized.
The defendants were charged and subsequently filed a motion to suppress. This case presents four-square the issue previously addressed on several occasions, the application of the privacy clause and the exclusionary rule to private action. The narrow issue before the Court in this case is:
“Are the fruits of a search conducted by a private citizen, without any type of governmental involvement, properly the subject of exclusion?”
This Court has previously held that private searches invade privacy rights protected by the Constitution and are properly the subject of our exclusionary rule. The rule was first articulated in State v. Brecht (1971), 157 Mont. 264, 485 P.2d 47. The same principle has been refined, approved or commented upon in the following cases: State v. Coburn (1974), 165 Mont. 488, 530 P.2d 442; State v. Sawyer (1977), 174 Mont. 512, 571 P.2d 1131; State v. Helfrich (1979), 183 Mont. 484, 600 P.2d 816; State v. Hyem (Mont. 1981), 630 P.2d 202, 38 St.Rep. 891; State v. Sayers (Mont. 1982), 199 Mont. 228,] 648 P.2d 291, 39 St.Rep. 1309; State v. Van Haele (Mont. 1982), [199 Mont. 522,] 649 P.2d 1311, 39 St.Rep. 1586. The rule has also been referred to in headnotes in State v. Sykes (Mont. 1983), [_ Mont. _,] 663 P.2d 691, 40 St.Rep. 690, and Duran v. Buttrey Food, Inc. (Mont. 1980), 616 P.2d 327, 37 St.Rep. 1545.
The last two cases to thoroughly analyze the rationale for the position applying the exclusionary rule to evidence seized by private persons are State v. Hyem, supra, and State v. Van Haele, supra. In Hyem, the charges arose when skis, belonging to one Buzz Welch, were found in defendants’ residence and seized by officers of the Carbon County Sheriffs Office pursuant to a search warrant issued by the local justice of the peace. The issuance of the warrant was based on affidavits given by two of Welch’s friends, who stated they had seen the skis at defendants’ rented home in Red Lodge, Montana. The informants had gained entry into defendants’ rented residence by telling a local realtor that they were interested in purchasing the home, although in point of fact, they were interested in looking for the skis. Therefore, the informants were technically trespassers.
The majority opinion distinguished the right of privacy in Mon *68 tana from the right of privacy protected by the Federal Constitution and noted that the right of privacy was specifically guaranteed in Article II, Section 10 of the 1972 Montana Constitution. The majority said:
“In Brecht, it was pointed out that there cannot be a fictional difference between classes of citizens: those who are commanded to obey the constitution and those who are not. Our constitutional prohibition against unreasonable invasion of privacy applies to all persons, whether acting for the state or privately.” Hyem, 630 P.2d at 206, 38 St.Rep. at 894.
This Court, in Hyem, indicated a concern with “the ever increasing presence of private police” and relied upon this concern in shoring up the argument that the privacy provision of the Constitution should be applied to prohibit individual action as well as state action.
Next, the majority opinion in Hyem addressed the application of the exclusionary rule to evidence seized illegally by private individuals. Unlike other courts, which have viewed the exclusionary rule as a rule of procedure, this Court indicated that the exclusionary rule was rooted in the Constitution itself. The majority said:
“The exclusionary rule is not a judicial plaything, casually adopted and casually waived. It is a constitutional answer to unconstitutional activity. It is an affirmation that a free government can no more tolerate the unlawful activities of its agents than crime in the streets. It is paste and cover for the bones of our individual constitutional rights, without which such rights were in danger of becoming an unfleshed skeleton.” Hyem, 630 P.2d at 208, 38 St.Rep. at 897.
The majority noted that a distinction had to be made where the unreasonable search was made by private individuals and not by the police. The Court’s opinion, in essence, distinguished federal law denying the application of the exclusionary rule to the fruits of private action by arguing that the Federal Constitution was not violated by private action and that, therefore, the exclusionary rule was not applied. However, this Court noted that, since our State Constitution was violated by a private search, the exclusionary rule should appropriately be applied in order to protect from having the constitutional right invaded. This rationale logically follows if the exclusionary rule itself is implied in the Constitution in order to give meaning to those constitutional rights specifically provided.
The dissent in State v. Hyem, supra, was premised upon traditional notions of constitutional principles. Unless specifically pro *69 vided otherwise, citizens’ rights articulated in the Constitution proscribed only state action; therefore, if a private citizen invaded the privacy of another citizen, there was no violation of the Constitution itself. Furthermore, in accordance with the view of all other courts, the dissent viewed the exclusionary rule as a rule of court procedure to deny admission to the fruits of illegally seized evidence in order to deter unlawful police activities and to preserve the integrity of the judiciary itself.
This Court now adopts the rationale of the three dissenters expressed in State v. Hyem, supra, and overrules all previous decisions of this Court inconsistent herewith.
Montana is one of a small minority of states to have an express provision for privacy in its Constitution. No other state has followed Montana’s lead in interpreting the privacy protections of a state constitution to be applicable to acts of private persons. Other state courts have commented upon the Montana decisions. In fact, a District Court judge in Wyoming was persuaded to follow this jurisdiction. On appeal, the Wyoming Supreme Court said:
“The sole jurisdiction which we have been able to identify in which a different rule prevails is in our sister state of Montana. The rule in Montana appears to be that the same constitutional protections pertain whether a search and seizure involves private individuals or law enforcement officers. State v. Hyem, Mont., 630 P.2d 202 (1981). The most charitable rationalization of that ruling is that it depends upon a peculiar provision of the Constitution of the State of Montana which is not found in the constitution of this state. Even so, the dissenter to the court’s opinion in State v. Hyem, supra, points out that other states having the same type of constitutional provision have adhered to the usual rule distinguishing private individuals from law enforcement officers. On the other hand one well could conclude, having perused the somewhat tortured history of that rule in the State of Montana, that the rule is chimerical. Unfortunately in this instance Deon Heiner persuaded the district judge to follow that rule in essence.” State v. Heiner (Wyo. 1984), 683 P.2d 629, 636.
We do not take offense at the Supreme Court of Wyoming terming our rule chimerical, which means fantastic or imaginary. Neither are we afraid to walk alone. Rather, we reverse the previously articulated rule because we believe it unsound.
The privacy section, Mont. Const. Art. II, Section 10 (1971), specifically states:
*70 “The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest.” (Emphasis supplied.)
The language of the section itself indicates that the framer’s contemplated state action by allowing an invasion where there was a compelling state interest.
Historically, constitutions have been means for people to address their government. In rare instances, the constitutional language itself has specifically addressed private action. For instance, Mont. Const. Art. II, Section 4 (1972), provides in part:
“. . . Neither the state nor any person, firm, corporation, or institution shall discriminate against any person . . . .” (Emphasis supplied.)
Notably, the privacy section does not address private individuals as does the civil rights provision quoted.
Although we do not feel our Constitution is sufficiently ambiguous to require extensive perusal of the constitutional transcripts, we do note that a speech on the floor of the convention by one delegate has been referred to in other decisions of this Court. In State v. Helfrich, supra, this Court eluded to the following excerpt from the constitutional debate:
“ '. . . It isn’t only a careless government that has this power to pry; political organizations, private information gathering firms, and even an individual can now snoop more easily and more effectively than ever before . . .’ Tr. at p. 5182.” Helfrich, 183 Mont, at 488, 600 P.2d at 818.
This quotation actually resulted from a delegate reading from a newspaper editorial which supported an expanded right of privacy. However, the balance of the delegate’s statement is significant. It reads:
“[I]t produces what I would call a semipermeable wall of separation between individual and state; just as the wall of separation between church and state is absolute, the wall we are proposing with this section would be semipermeable. That is, as a participating member of society, we all recognize that the state must come into our private lives at some point; but what it says is, don’t come into our private lives unless you have a good reason for being there. We feel that this, as a mandate to our government, would cause a complete reexamination and guarantee our individual citizens of Montana this very important right . . . .” (Emphasis supplied.) Mon *71 tana Constitutional Convention, Transcript of Proceedings, Vol. VII, pp. 5185-5182.
There is every indication that the delegates themselves adopted a privacy section which would only proscribe state action. Certainly, there is nothing in the constitutional debate that clearly indicates we should depart from traditional constitutional notions. Therefore, in accordance with well-established constitutional principles, we hold that the privacy section of the Montana Constitution contemplates privacy invasion by state action only.
The second issue which must be addressed is application of the exclusionary rule. Since we have held that the constitutional rights of the defendants have not been violated, the reason for applying the exclusionary rule fades. As a rule of court procedure, the exclusionary rule has been applied to deter illegal police conduct and to preserve judicial integrity. When applied to private action, the deterrence argument is inapplicable. Private individuals are not schooled in the exclusionary rule and most likely would be unaware of its application. Therefore, it would not deter them from engaging in searches that would be illegal if conducted by government officials.
The strongest support for application of the exclusionary rule to the fruits of private action comes from the “silver platter doctrine.” In a special concurrence filed to the majority opinion in State v. Van Haele, supra, reference was made to that doctrine:
“. . . As pointed out in the majority opinion, the United States Supreme Court in Elkins said in part:
“ ‘If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means — to declare that the government may commit crimes in order to secure the conviction of a private criminal — would bring terrible retribution. Against that pernicious doctrine this court should resolutely set its face.’ (Citations omitted.) 364 U.S. at 223, 80 S.Ct. at 1447, 4 L.Ed.2d at 1681.
“In [State v. JCoburn, also cited by majority, Justice Daly very logically noted:
“ ‘. . . [UJnreasonable or illegal intrusions knowingly accepted and used, from the private sector by the government amount to an extension of the silver platter doctrine condemned by Elkins, particularly when viewed in the light of judicial integrity emphasized in Elkins.’ (Emphasis in original.) 165 Mont, at 503, 530 P.2d at 450.”
*72 The special concurrence went on to note that:
“If the ‘silver platter doctrine’ is to be recognized for the purpose of excluding evidence obtained by private individuals then, in my opinion, it should be confined to instances where the evidence was obtained in violation of criminal statutes thereby rendering the evidence ‘illegal.’ In this way judicial integrity is preserved by not judicially blessing the fruits of illegal activity. Such an application of the exclusionary rule would not be premised upon an invasion of the accused’s constitutional rights. Rather, the exclusionary rule, as a rule of court procedure, would prevent the State from relying upon the illegal conduct of a private citizen.” Van Haele, 649 P.2d at 1318, 39 St.Rep. at 1595-1596.
In the case at bar, the evidence was seized by a landlord who was determined by the District Court to be a trespasser. Under such circumstances, judicial integrity does not require exclusion of the evidence. We reserve for another day the determination of whether to apply the exclusionary rule to evidence gathered as the result of felonious conduct.
The order of the District Court suppressing the questioned evidence is reversed. The case is remanded for trial.
MR. CHIEF JUSTICE TURNAGE and MR. JUSTICES HARRISON and GULBRANDSON concur.