DA 10-0086

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 171N

DOUGLAS MILLER,

      Plaintiff and Appellant,

  v.

GREAT FALLS ATHLETIC CLUB, LLC, d/b/a
PEAK HEALTH AND WELLNESS CENTER,

      Defendant and Appellee.

APPEAL FROM:   District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADV 08-1545 (b)
Honorable Julie Macek, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          John E. Seidlitz, Jr.; Seidlitz Law Office, Great Falls, Montana

      For Appellee:

          Lon T. Holden, Joseph D. Houston; Jardine, Stephenson,
Blewett & Weaver, Great Falls, Montana

Submitted on Briefs:  June 23, 2010

Decided:  August 9, 2010

Filed:

               _____
                        Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2006, the following memorandum decision shall not be cited as precedent.  It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2    Douglas Miller (Miller) appeals from an order granting summary judgment to the Great Falls Athletic Club, LLC, d/b/a The Peak Health and Wellness Center (The Peak), by the Eighth Judicial District Court, Cascade County.  We affirm.

¶3    The issue on appeal is whether the District Court properly granted summary judgment to The Peak.

¶4    Miller was injured in an industrial accident in January 1998, and filed a workers' compensation claim asserting he had a permanent total disability.  As part of an investigation of Miller's claims, a licensed private investigator requested and received permission from The Peak to observe and videotape Miller exercising there.  The investigator observed and videotaped Miller exercising on an elliptical machine in an open exercise area on two consecutive days.  There were approximately 75 other members using the fitness facility on both days.  The Peak is a membership fitness facility that is available to members and non-members for meetings, conferences, and

2

other activities. The Peak has a video surveillance system that records activities in several public areas of the facility, including the open exercise area where Miller was videotaped exercising. Notice of this video surveillance system was posted on The Peak's only public entrance.

¶5     Miller sued alleging that The Peak violated his privacy rights by authorizing the workers' compensation investigator to "surreptitiously" videotape him exercising. Miller claimed damages resulted from The Peak's alleged violation of his privacy rights because his doctors reviewed the videotape and determined that Miller's functional capacity was not as he had represented and therefore reduced his workers' compensation settlement. The Peak moved for summary judgment, which the District Court granted, concluding that there was no genuine issue of material fact and Miller had failed to establish a viable cause of action for violation of his alleged privacy rights.

¶6     This Court reviews summary judgment orders de novo, performing the same analysis as a district court pursuant to Rule 56 of the Montana Rules of Civil Procedure. *Saucier v. McDonald's Rests. of Mont., Inc.*, 2008 MT 63, ¶ 32, 342 Mont. 29, 179 P.3d 481. Summary judgment may be granted only when there is a complete absence of genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56(c); *Saucier*, ¶ 33.

¶7     Miller alleges both common law and constitutional causes of action for violation of his right to privacy. This Court has defined the common law cause of action for invasion of privacy as a "wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary

3

sensibilities." *Deserly v. Dept. of Corrections*, 2000 MT 42, ¶ 17, 298 Mont. 328, 995 P.2d 972; *Rucinsky v. Hentchel*, 266 Mont. 502, 505, 881 P.2d 616, 618 (1994); *Sistok v. Northwestern Tel. Sys., Inc.*, 189 Mont. 82, 92, 615 P.2d 176, 182 (1980). This Court explicitly held that "the privacy section of the Montana Constitution contemplates privacy invasion by state action only." *State v. Long*, 216 Mont. 65, 71, 700 P.2d 153, 157 (1985). "A constitutionally protected privacy interest exists when a person has a subjective or actual expectation of privacy which society is willing to recognize as reasonable." *Lincoln Co. Commn. v. Nixon*, 1998 MT 298, ¶ 16, 292 Mont. 42, 968 P.2d 1141.

¶8 As the District Court noted, Miller sued The Peak, not the State, and therefore fails to invoke a constitutional claim for violation of privacy. Furthermore, Miller fails to establish that exercising at a membership fitness facility constitutes a private activity. Regardless of whether Miller had a subjective expectation of privacy, such an expectation is not objectively reasonable. Miller was exercising in an open area that was visible from the entry area, there were approximately 75 other members present in the exercise area at the time, and The Peak had video cameras recording activities in the exercise area, which was announced by a notice at the entrance. Under these facts, Miller cannot demonstrate that his expectation of privacy was objectively reasonable. Thus, Miller cannot set forth sufficient facts to support either a common law or constitutional cause of action for violation of his privacy rights. Therefore, since Miller failed to show a genuine issue of material fact regarding the objective reasonableness of his expectation of privacy, and failed to show that he is entitled to judgment under his legal theories of invasion of

4

privacy, we conclude that the District Court correctly granted summary judgment to The Peak.

¶9    We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our 1996 Internal Operating Rules, as amended in 2006, which provides for memorandum opinions. It is manifest on the face of the briefs and the record that the appeal is without merit because the issues are factual and there clearly is sufficient evidence to support the findings of fact below.

¶10    Affirmed.

/S/ MIKE McGRATH

We concur:

/S/ W. WILLIAM LEAPHART
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS

Justice James C. Nelson, specially concurring.

¶11    I concur in the result of the Court's Opinion. Given the way this case was presented to the District Court, the trial judge could hardly have come to a different decision. Miller's arguments were conclusory and undeveloped; he failed to cite persuasive authority; he failed to raise potentially viable issues and arguments; and he failed to demonstrate how the facts of the case implicated the law. I join the Court's disposition of this appeal only because, this being an opinion that does not establish

precedent, we have not driven a preemptive stake through the heart of actions such as the one at bar.

¶12    I am not satisfied that members of athletic clubs forfeit their right of individual privacy simply by exercising in a facility where fellow members are working out—even where, incidentally, there may be other members of the public observing.  For many, working out at a gym or club, if not strictly private, is personal.  Members work out to lose weight, maintain cardio fitness, stave off the effects of aging, rehabilitate from injury or illness, or ameliorate the effects of stress, work, and modern-day life.  Far from being athletes in training, most members are ordinary people just trying to maintain some modicum of personal fitness.  People working out may very well not want their dress, their demeanor, their activity, their body, and their state of fitness (or lack thereof) preserved for use by some surreptitious videotaper.  Indeed, some clubs ban the use of cell phones in the exercise areas, not only because of the distraction of ring tones and conversations, but also because of the cameras.  This raises the question of why a club would give a corporate snoop free access to secretly film a member, where other members were prohibited from a less innocuous version of that same activity.

¶13    Similarly, I am not satisfied that simply posting a warning at the front door that there are surveillance cameras in operation gives private entities, private investigators, or law enforcement carte blanche to videotape or otherwise photograph club members working out.  The public is familiar with surveillance cameras, which are a fixture of modern businesses and institutions.  But the public is also cognizant of the limited purpose for which that sort of videotaping is designed and used:  security of the premises

and business invitees. Having one's workout surreptitiously taped by a private insurance company for *its* sole *business* purposes is something entirely different, and is not a use within the reasonable expectations of the club members. Indeed, I challenge The Peak to modify its surveillance camera warning to state that, upon request and without notice, private investigators, insurance companies, and law enforcement will be allowed to videotape members working out—and see how that plays in Poughkeepsie.

¶14   Furthermore, I am not satisfied that there is no constitutional private right of action when a private person or business entity violates the right to individual privacy of another human being. Certainly, there is nothing in the plain language of Article II, Section 10 that would lead to such a conclusion. The only exception that allows infringing the right of individual privacy is the showing of a compelling state interest. The Constitution does not put textual limits on *who* is capable of violating the guarantee of individual privacy, only that the infringement, whoever causes it, must be justified on one narrow basis. Prior to *State v. Long*, 216 Mont. 65, 700 P.2d 153 (1985), this Court held in a long line of cases that private searches invade privacy rights protected by the Constitution. *See id.* at 67, 700 P.2d at 155. The separate dissents of Justice Sheehy and Justice Hunt in *Long* were compelling. *See id.* at 73-84, 700 P.2d at 158-65. Moreover, the *Long* decision was handed down 25 years ago, and in those two and one-half decades, there has been a formidable evolution in the technology that enables snooping, along with the concomitant use of that technology by government, private entities, and individuals. The Internet did not even exist for public use 25 years ago, and personal computers were rare. Importantly, this Court has recently revisited its jurisprudence regarding the use of

7

surreptitious electronic monitoring by law enforcement and has held that this type of surveillance is subject to the warrant requirements of the Constitution. *See State v. Goetz*, 2008 MT 296, 345 Mont. 421, 191 P.3d 489. The point is that *Long* is not carved in stone; and, in light of the developments in technology, the progression of our caselaw, and the increasing abuse of the right of individual privacy by governments, private individuals, and businesses in the last 25 years, it may well be time to revisit that case.

¶15 Finally, I am not satisfied that the constitutional guarantees of individual privacy under Article II, Section 10 and to be free from unreasonable (i.e., warrantless) searches and seizures under Article II, Section 11 are not implicated by § 45-5-223(3), MCA. This section excepts out apparently warrantless, surreptitious videotaping by agents of insurance companies and by private investigators licensed by the State under § 37-60-301, MCA. To the extent the State makes private individuals and businesses into government agents in "fraud detection, prevention, or prosecution," then state action along with the protections of the Montana Constitution may well be involved.

¶16 None of these issues were raised. Therefore, I conclude that Miller's cause of action was not adequately pleaded, litigated, or briefed in the District Court or on appeal. Accordingly, it is wholly appropriate that we not make law in this case.

¶17 On that basis I specially concur.

/S/ JAMES C. NELSON

8