No. 05-534

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 125

TED MATTHEW VOERDING,

          Petitioner and Appellant,

   v.

STATE OF MONTANA,

          Respondent and Respondent.

APPEAL FROM:    The District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause Nos. DV 2004-1115 & DC 2000-340,
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Ted Matthew Voerding, *pro se*, Billings, Montana

      For Respondent:

      Hon. Mike McGrath, Montana Attorney General,
Micheal S. Wellenstein, Assistant Attorney General, Helena, Montana

      Fred Van Valkenburg, Missoula County Attorney, Missoula, Montana

Submitted on Briefs:  April 11, 2006

Decided:  June 6, 2006

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     Ted Matthew Voerding ("Voerding"), *pro se*, appeals from the Order of the District Court of the Fourth Judicial District, Missoula County, partially denying his Petition for Post-Conviction Relief.  We affirm.

¶2     The sole issue on appeal is whether the District Court correctly interpreted § 46-18-403(2), MCA (1999), as requiring credit for time served against fines only, and not against other court-imposed financial obligations such as fees, costs, and charges.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     In November of 2000, Voerding pled guilty to the offense of intimidation, a felony, in violation of § 45-5-203, MCA.  Consequently, the District Court filed a Judgment sentencing Voerding to a term of ten years with the Department of Corrections, with all ten years suspended.  Among the terms and conditions of Voerding's suspended sentence, the Judgment required Voerding to pay the following:  (1) a $100.00 fine; (2) an $85.00 fine "to go to the community service program"; (3) $325.00 to reimburse Missoula County for Voerding's court-appointed attorney; (4) $100.00 for the cost of the prosecution; (5) a fee of $20.00 to go to the County Attorney Surcharge Fund, pursuant to § 46-18-236, MCA; (6) a fee of $10.00 to go to the Victim-Witness Advocate Program Surcharge Fund, pursuant to § 46-18-236, MCA; (7) a $5.00 "Court Technology fee" pursuant to § 3-1-317(1)(a), MCA;[1]

---

[1]    As the State notes, the District Court incorrectly purported to impose a "fee" for "Court technology" pursuant to § 3-1-317(1)(a), MCA.  This statute provides only for a "surcharge for court information technology," and states that "[t]he surcharge imposed by this section is *not a fee* or fine and must be imposed in addition to other taxable court costs, fees, or fines."  Section 3-1-317(3),

2

and (8) a probationary supervision fee of no less than $120.00 and no more than $360.00 per year, at no less than $10.00 per month for the number of months under supervision, pursuant to § 46-23-1031, MCA.

¶4 In March of 2001, the State filed its Petition seeking to revoke Voerding's suspended sentence, claiming that he had violated the terms and conditions of his probation. After Voerding admitted the alleged violations, the District Court revoked his suspended sentence and committed him to the Department of Corrections for a term of ten years, with eight years suspended. In doing so, the court gave Voerding credit against his sentence for 303 days of jail time previously served. Among the terms and conditions of Voerding's suspended sentence, the court imposed the same financial obligations that were contained in the previous Judgment. Finally, the Judgment stated that "pursuant to Section 46-18-244(3)(c), M.C.A., one-third (1/3) of any earnings by the Defendant in the Montana State Prison or any other correctional institution shall be applied to the costs ordered in this cause."

¶5 In January of 2003, the State filed another Petition to Revoke, claiming that Voerding had again violated the terms and conditions of his probation. In January of 2004, after extensive delays, Voerding admitted to several violations. Consequently, in February of 2004, the District Court revoked Voerding's suspended sentence and sentenced him to a term of eight years in the Montana State Prison, with no time suspended. The court's Judgment provided that Voerding would receive credit against his sentence for 334 days of jail time

MCA (emphasis added). However, we need not address this error further, as it is not an issue in Voerding's appeal.

3

served.  Further, although the Judgment explicitly stated that Voerding was not obligated to pay any restitution, it also ordered that one-third of any of his earnings in prison "shall be applied to the restitution/costs ordered in this cause" pursuant to § 46-18-244(3)(c), MCA.

¶6      The State filed a Motion seeking amendment of the Judgment because the court had erroneously stated the period of time which Voerding had previously served in jail, and erroneously stated the number of days which should have been credited against his sentence.  Consequently, the court amended the Judgment to state that Voerding would receive credit against his sentence for 322 days of time previously served.

¶7      In November of 2004, Voerding filed his *pro se* Petition for Post-Conviction Relief. With this Petition, Voerding first argued that the court's Judgment was illegal because it failed to provide him credit against his sentence for a period of jail time which he served in Washington following his arrest pursuant to a Montana warrant.  Second, Voerding argued that the Judgment was illegal in its mandate that one-third of his prison earnings "be applied to the restitution/costs ordered in this cause."  Voerding contended that this was improper because, as the Judgment itself stated, he was not required to make a restitution payment. Finally, Voerding argued that he was entitled to credit against his fines, pursuant to § 46-18-403(2), MCA, for the jail time he had served prior to revocation of his suspended sentence.

¶8      The State conceded that Voerding's prison earnings should not be appropriated for the purpose of paying any restitution.  Yet, the State argued, without citing legal authority, that Voerding's prison earnings should be used to satisfy all the various financial obligations

4

imposed by the District Court. As to Voerding's request for credit against his sentence based on jail time spent in Washington, the State failed to provide any response. Finally, the State conceded that Voerding was entitled to credit against his fines for jail time served prior to revocation of his suspended sentence. However, the State also argued that Voerding was not entitled to such credit against the other financial obligations imposed by the court. In replying to this particular contention, Voerding argued that the term "fine" encompasses other court-imposed financial obligations such as fees, charges, and costs. Accordingly, Voerding claimed that he was entitled to credit for time served against all the financial obligations imposed by the District Court.

¶9      In July of 2005, the District Court filed its Order, granting Voerding's Petition in part, and denying it in part.[2] First, the court ordered that Voerding be granted credit against his sentence for the jail time he served in Washington, subject to verification by the Department of Corrections. Second, the court ordered that the Judgment be amended so as to eliminate

---

[2]   The record before us does not demonstrate why the District Court addressed the merits of Voerding's Petition. Based on the record, it would appear that the court should have dismissed the Petition pursuant to § 46-21-105(2), MCA, which provides that when a petitioner has been afforded the opportunity for a direct appeal of his or her conviction, grounds for relief that were or could reasonably have been raised on direct appeal may not be raised, considered, or decided in post-conviction proceedings. We have consistently applied this statutory bar in order to prevent the abuse of post-conviction relief proceedings by criminal defendants who would substitute those proceedings for direct appeal. *Basto v. State*, 2004 MT 257, ¶ 15, 323 Mont. 80, ¶ 15, 97 P.3d 1113, ¶ 15 (citation omitted). Voerding apparently anticipated that the State would raise this statutory bar; in his Petition he claimed that he had not appealed because his court-appointed counsel failed to provide effective assistance. Yet, the State did not present an argument regarding this threshold issue in opposing Voerding's Petition. Further, the District Court did not address this issue in its Order, and the parties have not addressed § 46-21-105(2), MCA, on appeal. Since this issue has not been raised, we will not address it. *State v. Herrick*, 2004 MT 323, ¶ 28, 324 Mont. 76, ¶ 28, 101 P.3d 755, ¶ 28.

the order that one-third of Voerding's prison earnings "be applied to the restitution/costs ordered in this cause" pursuant to § 46-18-244(3)(c), MCA. Consequently, the court ordered the "return of all monies collected for payment of fines or costs and fees since April 2004; and reduction of any credit already received against his fees and costs." Third, the court ordered that Voerding be granted credit against his fines for time served prior to revocation of his second suspended sentence. Finally, the court denied Voerding's request for credit, based on time served, against all his other court-imposed financial obligations.

¶10 From this partial denial of his Petition, Voerding now appeals.

## STANDARD OF REVIEW

¶11 In determining whether a petition for post-conviction relief was properly granted or denied, we review the district court's findings of fact to determine whether they are clearly erroneous, and we review the court's conclusions of law to determine whether they are correct. *Griffin v. State*, 2003 MT 267, ¶ 7, 317 Mont. 457, ¶ 7, 77 P.3d 545, ¶ 7 (citing *Porter v. State*, 2002 MT 319, ¶ 13, 313 Mont. 149, ¶ 13, 60 P.3d 951, ¶ 13). Here, our review is plenary because we are only considering a conclusion of law rendered by the District Court.

## DISCUSSION

¶12 In construing a statute, the intent of the legislature is controlling, and such intent must first be determined from the plain meaning of the words used. *Security Bank & Trust Co. v. Connors* (1976), 170 Mont. 59, 66, 550 P.2d 1313, 1317. This Court interprets statutory language without inserting what has been omitted or omitting what has been inserted.

6

Section 1-2-101, MCA.  Additionally, this Court interprets a statute by viewing it in light of the statutory scheme in which it resides.  *Orr v. State*, 2004 MT 354, ¶ 25, 324 Mont. 391, ¶ 25, 106 P.3d 100, ¶ 25 (citing *State v. Heath*, 2004 MT 126, 321 Mont. 280, 90 P.3d 426).

¶13    In resolving sentencing issues, we rely on the statutes in effect at the time the defendant committed his or her offense.  *Dexter v. Shields*, 2004 MT 159, ¶ 13, 322 Mont. 6, ¶ 13, 92 P.3d 1208, ¶ 13 (citing *State v. Muhammad*, 2002 MT 47, ¶ 24, 309 Mont. 1, ¶ 24, 43 P.3d 318, ¶ 24).  Here, we rely on the 1999 version of the criminal code because Voerding committed the offense of intimidation in July of 2000.

¶14    In pertinent part, § 46-18-403, MCA (1999), provides:

> **Credit for incarceration prior to conviction.**  (1) Any person incarcerated on a bailable offense and against whom a judgment of imprisonment is rendered must be allowed credit for each day of incarceration prior to or after conviction, except that the time allowed as a credit may not exceed the term of the prison sentence rendered.
> (2) Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of the offense must be allowed a credit for each day of incarceration prior to conviction, except that the amount allowed or credited may not exceed the amount of the fine.

In *State v. Fisher*, 2003 MT 33, 314 Mont. 222, 65 P.3d 223, we interpreted the same version of § 46-18-403, MCA, as existed in 1999.  In doing so, we held that "a sentencing court has no discretion in applying § 46-18-403, MCA.  It must employ both subsections and give the defendant credit for each day of incarceration against both the sentence and any fine imposed."  *Fisher*, ¶ 13.[3]

---

[3]  After this Court decided *Fisher*, the 2005 Legislature amended § 46-18-403(2), MCA, so that it now provides, in pertinent part:  "A person incarcerated on a bailable offense who does not supply

¶15    On appeal, Voerding argues that § 46-18-403(2), MCA (1999), entitles him to credit against all the financial obligations imposed by the District Court, not just the two fines totaling $185.00, for the time he served prior to the revocation of his second suspended sentence.  In support of this argument, Voerding relies on a portion of our decision in *Fisher* where we categorized fees, costs, and charges as "fines."  Specifically, Voerding relies on the following statement which we rendered in explaining the facts of the case:  "the court imposed fines, as follows:  $1,000 fine for the felony DUI, $450 reimbursement for public defender costs, $40 surcharge, $50 victim/witness fee, $10 technology fee, and $20 probationary supervision fee." *Fisher*, ¶ 5.  Based on this sentence, and because the holding in *Fisher* interpreted § 46-18-403(2), MCA, as requiring credit against "any fine imposed," Voerding argues that the term "fine" in § 46-18-403(2), MCA (1999), encompasses other court-imposed financial obligations.

¶16    We conclude that the plain meaning of the word "fine" in the subject statute does not encompass fees, costs, charges, or any other court-imposed financial obligations.  We reach this conclusion, in part, based on the commonly accepted meaning of the term "fine," which is defined as "[a] pecuniary criminal punishment or civil penalty payable to the public treasury."  Black's Law Dictionary 664 (8th ed. 2004).  As criminal fines are punitive in nature, they are distinct from other court-imposed financial obligations associated with a criminal proceeding which are compensatory in nature, such as an assessment of fees for

---

bail and against whom a fine is levied on conviction of the offense *may* be allowed a credit for each day of incarceration prior to conviction, except that the amount allowed or credited may not exceed

8

probationary supervision, or a charge to defray the local government's costs in administering the criminal justice system.

¶17　　Our conclusion is also supported by reference to the surrounding statutes in Title 46 which distinguish fines from other court-imposed financial obligations. First, the structure of the criminal statutory scheme distinguishes fines from other court-imposed financial obligations by addressing them in different sections. The general provisions regarding imposition of a fine are set forth in § 46-18-231, MCA, while the general provisions regarding imposition of costs are set forth separately in § 46-18-232, MCA. Similarly, the imposition of charges is separately addressed in, *inter alia*, § 46-18-236, MCA, while restitution is separately addressed in, *inter alia*, § 46-18-241, MCA. Additionally, the imposition of a fee for supervision by the Department of Corrections is addressed separately in § 46-23-1031, MCA.

¶18　　Second, the criminal statutes distinguish fines from other court-imposed financial obligations in explicit terms. For example, § 46-18-236(1), MCA, which provides for the imposition of a financial charge based in part on the number of misdemeanor and felony charges brought against an individual, states that this charge "is in addition to other taxable court costs, fees, or fines . . . ." Thereafter, § 46-18-236(3), MCA, states that "[t]he charges imposed by this section are not fines and must be imposed in addition to any fine and may not be used in determining the jurisdiction of any court." Similarly, § 3-1-317, MCA, which provides for the imposition of a "[u]ser surcharge for court information technology," states

the amount of the fine." (Emphasis added.)

that "[t]he surcharge imposed by this section is not a fee or fine and must be imposed in addition to other taxable court costs, fees, or fines."  Section 3-1-317(3), MCA.  Finally, § 46-18-251(1), MCA, also recognizes a distinction between fines and other court-imposed financial obligations, noting that an offender may be "subjected to any combination of fines, costs, restitution, charges, or other payments . . . ."  This statute then proceeds to delineate proper allocation of funds collected from an offender toward each of these different categories of financial obligations.

¶19   We must reject Voerding's argument here because of the clear statutory distinction between fines and other court-imposed financial obligations.  However, we acknowledge that Voerding's contention is based on a meticulous reading of *Fisher*.  Unfortunately, the portion of *Fisher* which Voerding relies on, which is not a holding, constitutes an erroneous characterization of all the defendant's court-imposed financial obligations as "fines."  In reality, the court imposed not only fines, but fees, charges, and costs as well.  It is indeed uncomfortable to cope with a mistake such as this, especially when it is brought to our attention by a *pro se* litigant who, although untrained in the law, apparently exercised more care in reading *Fisher* than we did in writing it.[4]  Yet, we can not perpetuate this mistake by expanding the meaning of "fines" to include other court-imposed financial obligations, such as fees, charges, and costs, when these obligations are statutorily distinct from fines.  Accordingly, we overrule *Fisher* to the extent it suggests that the term "fine" in

---

[4]  Having concurred in *Fisher*, the author acknowledges his complicity in the mistake made therein.

10

§ 46-18-403(2), MCA, encompasses other types of court-imposed financial obligations such as fees, charges, and costs.

¶20    It is true that Voerding's argument here could succeed if we simply read § 46-18-403(2), MCA (1999), in isolation and construed it in light of our statement in *Fisher* which erroneously categorized all the defendant's court-imposed financial obligations as "fines." However, as noted above, we are required to construe statutes according to the context in which they reside. *Orr*, ¶ 25. Here, the context–i.e., the surrounding statutes which explicitly and implicitly distinguish the various types of court-imposed financial obligations–clearly indicates that fines are distinct from other court-imposed financial obligations such as fees, costs, and charges. Given our obligation to promote consistency in the application of the criminal code, we can not hold that the term "fine," as used in § 46-18-403(2), MCA (1999), encompasses fees, costs, and charges, while that term, as used in the surrounding statutes, clearly does not encompass these additional court-imposed financial obligations.

¶21    Moreover, as noted above, we must interpret statutory language without adding to it or subtracting from it. Section 1-2-101, MCA. Here, to adopt Voerding's argument would be to improperly add terms such as "fee," "cost," and "charge" to § 46-18-403(2), MCA (1999).

### CONCLUSION

¶22    In conclusion, our statement in *Fisher* which characterized all the defendant's court-imposed financial obligations as "fines" was not intended to indicate that the term "fine," as it is used in § 46-18-403(2), MCA (1999), encompasses any other type of

11

court-imposed financial obligation. Thus, *Fisher* is hereby overruled to the extent that it suggests that idea.

¶23 We conclude that the District Court properly interpreted § 46-18-403(2), MCA (1999).

¶24 Affirmed.[5]

/S/ JAMES C. NELSON

---

[5] As we do not wish to promote inappropriate reliance on this decision, we must point out that our holding is limited to the meaning of the term "fine" in the subject statute. We note that § 46-18-403, MCA, provides for credit based on incarceration *prior* to conviction. Yet, the District Court cited § 46-18-403, MCA, in ordering that Voerding receive credit for incarceration which occurred *after* his conviction, and prior to the revocation of his second suspended sentence. Because the parties did not raise the issue, we do not analyze whether § 46-18-403, MCA, is a proper basis for awarding credit for incarceration which occurred after a conviction but prior to revocation of a suspended sentence. *Herrick*, ¶ 28.

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JIM RICE