No. 05-553

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 300

_____

STATE OF MONTANA,

        Plaintiff and Appellant,

    v.

ERIK A. BRANAM,

        Defendant and Respondent.

_____

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and for the County of Missoula, Cause No. DV-05-461,
                The Honorable John S. Henson, Presiding Judge.

COUNSEL OF RECORD:

        For Appellant:

                Fred Van Valkenburg (argued), County Attorney; Jennifer Clark (argued),
                Deputy County Attorney, Missoula, Montana

        For Respondent:

                Martin W. Judnich (argued), Attorney at Law, Missoula, Montana

_____

                            Argued:  April 21, 2006
                       Submitted:   May 2, 2006

                        Decided:  November 22, 2006

Filed:

_____
                         Clerk

Justice John Warner delivered the Opinion of the Court.

¶1     The State appeals from an order of the Fourth Judicial District Court, Missoula County, dismissing its petition to forfeit property.  The State seeks the forfeiture of Erik A. Branam's (Branam) Cadillac Escalade, cash totaling $44,360.00, and an AR-15 semi-automatic rifle (hereinafter referred to together as Property) under § 44-12-102, MCA.  We reverse and remand.

¶2     The issue on appeal is:

¶3     Did the District Court correctly dismiss the forfeiture petition on the grounds that at the time the State seized the Property it lacked probable cause for seizure under §§ 44-12-102-103, MCA?

## FACTS AND PROCEDURAL HISTORY

¶4     Sergeant Evenson (Evenson) of the Missoula County Sheriff's Department responded to a reported assault at approximately 3:00 a.m. on April 21, 2005.  One of the alleged victims told Evenson that the perpetrators of the assault were in a Cadillac Escalade and identified Branam's Escalade as it drove by.  Evenson stopped the Escalade in question shortly thereafter, near where the assault was reported.  All of the occupants fled the vehicle.  Branam, who was the driver, returned, but he fled again while Evenson talked to dispatch.  Other officers apprehended another occupant of the Escalade shortly thereafter, and a search incident to his arrest revealed that he possessed a small amount of marijuana.

¶5     As all of the occupants of the Escalade had fled, or were under arrest, Evenson decided not to leave the vehicle on the street unattended.  He called a business named Pro

2

Towing to take the Escalade to its storage yard, an unsecured facility. An employee of Pro Towing called the Sheriff's Department at about 10:00 a.m. that morning and informed the dispatcher that he had looked in the Escalade and discovered a large amount of cash and a rifle. Missoula County Deputy Sheriff McNeal (McNeal) went to Pro Towing and inspected the money and the rifle. McNeal took possession of the cash and the rifle and issued a receipt for them. He also sealed the Escalade, placed a hold on it, and ordered it moved to Red's Towing for inside storage under the control of the Sheriff's Department.

¶6 Officer McNeal waited at Pro Towing and arrested Branam when he came to retrieve the Escalade at about noon. A search incident to Branam's arrest uncovered two U.P.S. receipts to a person in Florida in amounts totaling $1,460.00, two Travelers Express receipts totaling $1,000.00, and three Global Mortgage and Credit LLC receipts made out to another person, totaling $1,753.00.

¶7 An officer counted the cash the Pro Towing employee found in the Escalade, which totaled $32,580.00. The officer thought he smelled the odor of marijuana emanating from two of the cash bundles. A canine alerted on the cash bundles during a drug sniff. When the dog was taken to the Escalade, however, he failed to alert on the vehicle. An officer also looked through the windows of the Escalade and saw what appeared to be syringe needle caps on the console, a rifle magazine, and a box under the back passenger seat.

¶8 Using the information described above, a search warrant was obtained for the Escalade and executed on April 27, 2005. The search produced two prescription

medicine bottles, numerous receipts, ammunition for the rifle, and another box containing four bundles of cash totaling $11,780.00.

¶9 When the petition for forfeiture in question here was filed on May 10, 2005, it alleged that following the search of the Escalade, officers spoke to multiple confidential informants who stated that Branam transported several pounds of marijuana in the Escalade, sold large amounts of marijuana out of it, and kept thousands of dollars on hand to purchase large quantities of marijuana.

¶10 Branam moved to dismiss the petition for civil forfeiture of the Property on the grounds that it referenced statutes that did not exist as the authority under which the State had seized the Property. Branam also moved for dismissal of the petition for forfeiture under M. R. Civ. P. 12(b) or, in the alternative, for summary judgment under M. R. Civ. P. 56 on the grounds that the State lacked the necessary probable cause to seize the Property under § 44-12-103, MCA, when McNeal sealed the Escalade at Pro Towing and ordered it moved to Red's Towing. The District Court dismissed the petition under M. R. Civ. P. 12(b)(6) on the grounds that the State lacked probable cause required by § 44-12-103, MCA, to seize the Property at Pro Towing on April 21, 2005. The District Court also noted in its order that the State had not charged Branam with a drug-related offense. The State appeals.

### STANDARD OF REVIEW

¶11 We review *de novo* a district court's ruling on a motion to dismiss pursuant to M. R. Civ. P. 12(b)(6). *Plouffe v. State*, 2003 MT 62, ¶ 8, 314 Mont. 413, ¶ 8, 66 P.3d 316, ¶ 8. A motion to dismiss under M. R. Civ. P. 12(b)(6) has the effect of admitting all well-

4

pleaded allegations in the complaint. In considering the motion, the complaint is construed in the light most favorable to the plaintiff, and all allegations of fact contained therein are taken as true. *Plouffe*, ¶ 8 (internal citations omitted). We will affirm a district court's dismissal when we conclude that the plaintiff would not be entitled to relief based on any set of facts that could be proven to support the claim. *Plouffe*, ¶ 8. The determination of whether a complaint states a claim is a conclusion of law, and we review the district court's conclusions of law for correctness. *Plouffe*, ¶ 8.

## ISSUE

¶12 *Did the District Court correctly dismiss the forfeiture petition on the grounds that at the time the State seized the Property it lacked probable cause for seizure under §§ 44-12-102-103, MCA?*

## DISCUSSION

¶13 Branam argues that for the State to forfeit the Property, it must have had probable cause to believe that the Property had been used to transport, keep, deposit, or conceal a controlled substance, at the time it was seized.

¶14 The State argues when property is lawfully seized for purposes other than for forfeiture, and remains lawfully in the State's possession, a later petition to forfeit the property may be maintained. The State further posits that when McNeal seized the Property at Pro Towing, he had sufficient probable cause to seize it as evidence of an offense. Thus, the State argues, it could continue to hold the Property while it conducted a further investigation. The State contends that by the time it filed the petition for forfeiture, further information had been gathered which provided the necessary probable

5

cause to seize the Property for civil forfeiture purposes under § 44-12-103(2)(d), MCA, and thus its petition was not subject to dismissal under M. R. Civ. P. 12(b); nor was the petition subject to being dismissed on summary judgment under M. R. Civ. P. 56. We agree.

¶15 In construing a statute, the intent of the legislature is controlling, and such intent must first be determined from the plain meaning of the words used. *Voerding v. State*, 2006 MT 125, ¶ 12, 332 Mont. 262, ¶ 12, 136 P.3d 502, ¶ 12. We interpret statutory language without inserting what has been omitted or omitting what has been inserted. Section 1-2-101, MCA. Additionally, we interpret a statute by viewing it in light of the statutory scheme in which it resides. *Voerding*, ¶ 12 (citations omitted).

¶16 Property is subject to forfeiture to the State if it is or has been used in connection with the manufacture, distribution or sale of dangerous drugs in violation of law. Section 44-12-102(1)(b), (g), (2)(a), MCA. Property may be seized for the purpose of declaring it forfeit to the State if an officer "has probable cause . . . to believe that a conveyance has been used or is intended to be used to unlawfully transport a controlled substance, or probable cause to believe that a conveyance has been used to keep, deposit, or conceal a controlled substance." Section 44-12-103(1), MCA.

¶17 We agree with Branam that if the State seizes property without a warrant solely for the purpose of forfeiture, the State must have probable cause at the time of the seizure to believe that such property is connected to dangerous drug activity, and is subject to forfeiture. Section 44-12-103(1), (2)(d), MCA. However, if property is lawfully seized

6

by the State for purposes other than forfeiture, nothing in § 44-12-103, MCA, precludes a later petition to forfeit such property.

¶18    The statutes contemplate that if the State lawfully seizes property for reasons other than forfeiture, and while that property is lawfully in the State's possession, information is developed which establishes probable cause to believe it is subject to forfeiture under § 44-12-102, MCA, a petition may then be filed to have such property adjudged forfeit. Section 44-12-103(2)(a), MCA, provides that "[s]eizure without a warrant may be made if the seizure is incident to an arrest or a search under a search warrant issued for another purpose."    Section 46-5-103(2), MCA, concerning the introduction into evidence of property seized by the State, dovetails with the forfeiture statutes and provides that "[e]vidence, contraband, or persons lawfully seized are admissible as evidence in any prosecution or proceeding whether or not the prosecution or proceeding is for the offense in connection with which the search was originally made."    Thus, we conclude that a petition for forfeiture of property that is already lawfully in the State's possession may be maintained when an investigation develops probable cause to believe such property is subject to forfeiture.

¶19    In this case, the Property came lawfully into the State's possession. Montana law provides that a search and seizure without a warrant may not be held illegal if the defendant has "disclaimed any right to or interest in the place or object searched or the evidence or contraband seized," or if "a right of the defendant has not been infringed by the search and seizure." Section 46-5-103(1)(a), (b), MCA. The first lawful seizure of the Property occurred when officers contacted Pro Towing to move the vehicle from the

7

street after all its occupants fled. A person abandoning his property thereby abandons his expectation of privacy with regard to that property as well. *State v. 1993 Chevrolet Pickup*, 2005 MT 180, ¶ 14, 328 Mont. 10, ¶ 14, 116 P.3d 800, ¶ 14; *State v. Hamilton*, 2003 MT 71, ¶ 26, 314 Mont. 507, ¶ 26, 67 P.3d 871, ¶ 26. Abandonment is defined as "[t]he relinquishment of a right; the giving up of something to which one is entitled." *1993 Chevrolet Pickup*, ¶ 14 (quoting *Hawkins v. Mahoney*, 1999 MT 296, ¶ 14, 297 Mont. 98, ¶ 14, 990 P.2d 776, ¶ 14). If no express intent to abandon the property exists, intent may be inferred by the acts of the owner. *1993 Chevrolet Pickup*, ¶ 15. Branam's act of fleeing from law enforcement and leaving the Escalade and its contents on the street constitutes abandonment sufficient to justify officers having the Escalade moved to Pro Towing.

¶20 An employee of Pro Towing, a private individual, then discovered the cash and the rifle in the Escalade and contacted law enforcement. The privacy section of the Montana Constitution contemplates privacy invasion by state action only. *State v. Long*, 216 Mont. 65, 71, 700 P.2d 153, 157 (1985). Therefore, the warrantless discovery of these items by the Pro Towing employee did not infringe on Branam's right to privacy. *Long*, 216 Mont. at 71, 700 P.2d at 157.

¶21 The next seizure of the Property by the State occurred when Deputy McNeal took possession of a portion of the money, the rifle, and placed a hold on the Escalade at Pro Towing. This case mirrors *State v. Pierce*, 2005 MT 182, ¶¶ 15-18, 328 Mont. 33, ¶¶ 15-18, 116 P.3d 817, ¶¶ 15-18, to the degree that officers, through impoundment, seized a vehicle pending the issuance of a search warrant. In *Pierce*, the seizing officer sealed and

8

placed a hold on a pickup after he lawfully entered its cab and smelled a strong odor of burnt marijuana and the owner of the pickup had admitted that someone had committed the offense of smoking marijuana in the pickup. *Pierce*, ¶ 18. We held this was sufficient to impound the truck until a search warrant could be obtained. *Pierce*, ¶ 19. In this case, at the time Deputy McNeal took possession of the money and the rifle, and placed a hold on the Escalade, he had the following information:

> The Escalade had been stopped by Sgt. Evenson, which resulted in all of its occupants fleeing.

> The driver, Branam, initially fled, but he immediately returned, and then fled again.

> Another occupant of the Escalade was apprehended shortly thereafter. This man had marijuana in his possession.

> Approximately $30,000 in cash and an AR-15 semi-automatic rifle were found in the Escalade after it was removed from the street and taken to Pro Towing.

¶22 Probable cause to seize property exists when the facts and circumstances within an officer's knowledge are sufficient to warrant a reasonable person to believe that another person has committed an offense. *State v. Anderson*, 1999 MT 60, ¶ 12, 293 Mont. 490, ¶ 12, 977 P.2d 983, ¶ 12; *State v. Wakeford*, 1998 MT 16, ¶ 22, 287 Mont. 220, ¶ 22, 953 P.2d 1065, ¶ 22. When a vehicle is stopped, suspicions of an offense connected with that vehicle arise when all of the occupants immediately flee. When one of the occupants is captured shortly thereafter and has marijuana in his possession, further suspicions arise. When over $30,000 in cash is then discovered in the vehicle, along with a semi-automatic assault rifle, the combination of all of these circumstances are sufficient to cause a

reasonable person to believe that the property is evidence of an offense against the law. *See Pierce*, ¶ 19. In this particular instance, the offenses of illegal gambling activity, robbery, burglary, and trafficking in dangerous drugs come readily to mind. Similar to *Pierce*, we conclude that when McNeal took possession of the Property and placed a hold on the Escalade at Pro Towing he had sufficient probable cause to seize the Property, have it moved to the secure facility at Red's Towing, and conduct a further investigation.

¶23 As the Property was lawfully seized without a warrant, it could be retained for a sufficient time to complete an investigation. Section 46-5-311(1), MCA. When counting the cash the employee secured from the vehicle, an officer smelled marijuana and a drug dog alerted on the money during a sniff. Officers observed syringe needle caps on the console of the Escalade, as well as a rifle magazine, and what appeared to be a box under the back passenger seat. Then, upon application, a magistrate determined sufficient probable cause existed to issue a search warrant for the Escalade. Further evidence was found when officers searched the Escalade as noted in ¶ 7 above. Branam has not challenged the validity of the search warrant. Nor did Branam apply for return of the Property as provided by § 46-5-312, MCA. We conclude that the Property was lawfully in the possession of the State by virtue of a seizure authorized by a search warrant when the petition for forfeiture was filed on May 10, 2005. It is thus admissible as evidence in the forfeiture proceeding pursuant to § 46-5-103(2), MCA, and, pursuant to § 46-5-312(2)(a), MCA, the Property did not have to be returned to Branam.

¶24 The petition for forfeiture listed in detail the evidence gathered by the State. Significantly, in addition to the circumstantial evidence of the Property's use in the drug

10

trade as evidenced by the large amount of cash and the assault rifle, the State alleged in the petition for forfeiture that multiple confidential sources revealed that Branam transported pounds of marijuana in the Escalade, sold large amounts of marijuana out of it, and kept thousands of dollars on hand to purchase large quantities of marijuana.

¶25 In considering a motion to dismiss, we construe the petition in the light most favorable to the State and take factual allegations in the petition as true. *Plouffe*, ¶ 8. The facts alleged in the petition for forfeiture, when considered true, are sufficient to satisfy the requirements of § 44-12-103(2)(a), MCA. Thus, the petition is sufficient to withstand Branam's M. R. Civ. P. 12(b)(6) motion to dismiss.

¶26 Nor is Branam entitled to summary judgment dismissing the petition. Summary judgment may only be granted when the party moving therefore is entitled to judgment as a matter of law. M. R. Civ. P. 56; *Cole v. Valley Ice Garden, L.L.C.*, 2005 MT 115, ¶ 4, 327 Mont. 99, ¶ 4, 113 P.3d 275, ¶ 4. As we have determined that, as a matter of law, the Property was lawfully seized, and probable cause existed to institute forfeiture proceedings under § 44-12-103(2)(d), MCA, Branam is not entitled to summary judgment. The question of whether the State can present sufficient admissible evidence at trial to establish that the Property is subject to forfeiture under § 44-12-102, MCA, is not before us, and we make no comment on admissibility of evidence or the strength of the State's case.

¶27 Branam also argues that the petition for forfeiture must be dismissed because no dangerous drug related criminal charges have been filed against him. However, Branam cites neither statutory authority, nor precedent, that requires the State to file criminal

11

charges against the owner of property it seeks to have declared forfeit. A requirement that the owner of the property sought to be forfeited be charged with a criminal offense is not contained in the statutes, and we decline to insert one. Section 1-2-101, MCA.

¶28 Finally, Branam argues for the first time in his response brief that the District Court erred in declining to dismiss the petition because the State included erroneous statutory citations in its petition as noted in ¶ 10 above. This issue is separate and distinct from the issue appealed by the State. Thus, if Branam desired to have this Court address this issue, he was required to file a cross-appeal. He did not do so and therefore we do consider this issue on appeal. *Colemore v. Uninsured Employers' Fund*, 2005 MT 239, ¶ 39, 328 Mont. 441, ¶ 39, 121 P.3d 1007, ¶ 39 (citation omitted). Further, in the State's petition for forfeiture, the correct statute to accomplish the desired forfeiture is referred to. Branam's motions also make it clear that he was in no way mislead by the citation error in the petition, nor was he prejudiced in any way. We agree with the District Court that this error in citation, which mislead no one and caused no harm, is insufficient to justify dismissing the petition. It is *de minimus*, and will not be considered. Section 1-3-224, MCA.

## CONCLUSION

¶29 Reversed and remanded for further proceedings consistent with this Opinion.

/S/ JOHN WARNER

12

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JIM RICE


Justice James C. Nelson, specially concurring.

¶30    I concur in the result of the Court's Opinion, but not in all that is said. In particular, I do not agree with the Court's "abandonment" analysis at ¶ 19. First, there is no evidence in the record that Branam "disclaimed any right or interest" in the Escalade automobile. He did flee from the police at the time they pulled his vehicle over; however, he returned once, then ran again. The next day he showed up at Pro Towing to reclaim his vehicle. It is simply an after-the-fact justification for the search to reason from this chain of events that Branam disclaimed any right or interest in his car. Obviously, he did not.

¶31    Moreover, the cases cited in ¶ 19 are factually and legally distinguishable and do not support the Court's decision. First, *Hawkins v. Mahoney*, 1999 MT 296, 297 Mont. 98, 990 P.2d 776, involved the question of whether an inmate who escaped the Montana State Prison had abandoned his personal property which he left at the prison when he absconded. Our opinion defined "abandonment" in the following terms:

> Personal property, upon being abandoned, ceases to be the property of any person, unless and until it is reduced to possession *with the intent to acquire title to, or ownership of, it*. Such property may, accordingly, be appropriated by anyone, *if it has not been reclaimed by the former owner* . . . .

13

*Hawkins*, ¶ 13 (first emphasis added, second emphasis in original) (quoting 1 C.J.S. *Abandonment* § 12 (1985)). We also observed that the *intent* of the person who "abandons" property is a "requisite element" of abandonment. *Hawkins*, ¶ 16. We determined that even though there may have been a "rebuttable presumption" that Hawkins intended to abandon his property when he escaped prison, there was no evidence that the prison authorities intended to acquire title to his property, as they instead had labeled the box containing the property with Hawkins' name and put it in a storage room. *Hawkins*, ¶¶ 3, 19.

¶32 The same is true here. Even if there arose a rebuttable presumption that Branam intended to abandon a vehicle worth many thousands of dollars—a stretch of common sense under any test—that presumption was rebutted when he sought to reclaim the vehicle at Pro Towing the next day. *See Hawkins*, ¶ 19. Moreover, there is no evidence in the record that the police sought to acquire title to or ownership of the Escalade. Indeed, as in *Hawkins*, the authorities simply impounded the vehicle and waited until Branam showed up to reclaim it.

¶33 Likewise, in *State v. Hamilton*, 2003 MT 71, 314 Mont. 507, 67 P.3d 871, the object of the police search involved a wallet that Hamilton had lost and that was subsequently turned over to the authorities. The police opened the wallet to determine the identity of the owner; however, they also conducted an inventory search. In so doing, they opened the coin purse in the wallet and discovered a controlled substance there. *Hamilton*, ¶¶ 6-10. We concluded that Hamilton had not "abandoned" her property but, rather, had "lost" it and, therefore, had retained a reasonable expectation of privacy in the

14

contents of her wallet. *Hamilton*, ¶¶ 25-26. Again, we focused on the *intent* of the property owner: Did she intentionally and voluntarily surrender her expectation of privacy in her property? *Hamilton*, ¶ 29.

¶34 In the instant case, Branam did not lose his vehicle, so *Hamilton* is factually distinguishable from that standpoint. Furthermore, there is no evidence at all that Branam intentionally surrendered his expectation of privacy in his car. In fact the opposite is true—he sought to reclaim his property the following day.

¶35 Finally, *State v. 1993 Chevrolet Pickup*, 2005 MT 180, 328 Mont. 10, 116 P.3d 800, also is not on point. *1993 Chevrolet Pickup* did not involve the abandonment of a vehicle. Rather, this case had to do with a person's placing evidence of criminal conduct with his garbage and depositing the same in a trash can in a public alley with the intent that it be picked up and disposed of by third parties. *1993 Chevrolet Pickup*, ¶¶ 3-4, 15. In our determination that he had abandoned his garbage we again focused on *intent* as the "paramount inquiry." *1993 Chevrolet Pickup*, ¶ 15.

¶36 The case at bar does not involve garbage placed by its owner in a trash can but, rather, an expensive and valuable vehicle. No evidence was presented that Branam knowingly determined to abandon his vehicle—in other words, to relinquish title and ownership to someone else. Furthermore, there is no evidence in the record that the police seized the vehicle with the intent to acquire title and ownership. Indeed, the police were working on precisely the contrary premise—that Branam would come to Pro Towing to reclaim his car. And, that is precisely what he did.

¶37 In short, I cannot conclude that Branam "abandoned" his vehicle. Not only is the evidence to the contrary, but the Court has not conducted the sort of "intent-focused" analysis that our case law requires and that is necessary to reach such a conclusion. There may have been other legal theories that would have supported the police's securing Branam's vehicle and its contents—*see*, *e.g.*, *State v. Sawyer*, 174 Mont. 512, 571 P.2d 1131 (1977), *overruled in part on other grounds*, *State v. Long*, 216 Mont. 65, 67, 71, 700 P.2d 153, 155, 157 (1985)—but the theory of "abandonment" does not support the Court's decision here.

¶38 That said, and while I have other reservations with the Court's Opinion, I agree with the result.

/S/ JAMES C. NELSON

Chief Justice Karla M. Gray and Justice Patricia O. Cotter join in the Special Concurrence of Justice James C. Nelson.

/S/ KARLA M. GRAY

/S/ PATRICIA COTTER