# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-01228-COA

VERENZO CARTRELL GREEN A/K/A VERENZO GREEN

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/07/2013 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON JR. |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: ERIN ELIZABETH PRIDGEN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | RONNIE LEE HARPER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNTS I, II, AND III, POSSESSION OF A WEAPON BY A CONVICTED FELON, AND SENTENCED AS A HABITUAL OFFENDER TO TEN YEARS FOR EACH COUNT, TO RUN CONSECUTIVELY; AND COUNT IV, TRAFFICKING STOLEN FIREARMS, AND SENTENCED TO FIFTEEN YEARS, TO RUN CONCURRENTLY TO THE SENTENCES IN COUNTS I, II, AND III, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION |
| DISPOSITION: | AFFIRMED: 01/20/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

BEFORE IRVING, P.J., FAIR AND JAMES, JJ.

FAIR, J., FOR THE COURT:

¶1.    Verenzo Green was convicted of three counts of possession of a weapon by a convicted felon and one count of trafficking stolen firearms. He was sentenced as a habitual offender to ten years for each count of felon of possession of a firearm in the custody of the Mississippi Department of Corrections, to run consecutively; he also received a concurrent sentence of fifteen years for trafficking stolen firearms. On the day of trial, Green filed a motion to suppress, arguing the police discovered the firearms through an illegal search of his vehicle. The trial court denied the motion. Green claims on appeal that (1) the trial court erred in denying his motion to suppress, and (2) his conviction for trafficking stolen firearms was not supported by sufficient evidence. Finding no error, we affirm.

**FACTS**

¶2.    On February 28, 2012, Agents George Pirkey and David Washington of the Adams County Sheriff's Department spotted Green outside of a grocery store. There was an outstanding warrant for Green's arrest for a burglary committed a month before. When the agents first saw him, Green and several other men were standing by a vehicle with its trunk open. As soon as Green noticed the agents, he closed the trunk and walked towards the entrance to the store. But instead of walking into the store, he threw a set of car keys down and ran into some nearby woods. Agent Pirkey attempted to chase Green on foot, while Agent Washington took the police car, but they were unable to catch him. The agents returned to the store a few minutes after the chase began and spoke with the store manager. After Agent Pirkey explained the situation to the manager, she requested that the car be towed. The police called a tow truck and ran the plate of the vehicle, which identified Green

2

as the owner. Additionally, the police conducted an inventory search of the vehicle. During the inventory search, Agent Pirkey used the car keys left by Green to open the trunk of the vehicle. Agent Pirkey discovered three guns on top of two large speakers; the guns included a Colt .38 special revolver, a .22 caliber Ruger revolver, and a .22 caliber Heritage Rough Rider. Green was indicted on three counts of possession of a weapon and one count of trafficking a firearm. He was found guilty at trial. Additional facts pertaining to the trial will be discussed below, as necessary.

## DISCUSSION

### 1. Suppression of Evidence

¶3. The court denied Green's motion to suppress introduction and testimony about the handguns found in the trunk, finding that (1) Green abandoned his vehicle on private property, and (2) the police were reasonable in conducting an inventory search before impounding the vehicle. "When reviewing a trial court's ruling on a motion to suppress, we must assess whether substantial credible evidence supports the trial court's finding considering the totality of the circumstances." *Shaw v. State*, 938 So. 2d 853, 859 (¶15) (Miss. Ct. App. 2005) (citing *Price v. State*, 752 So. 2d 1070, 1073 (¶9) (Miss. Ct. App. 1999)). "The standard of review for the admission or suppression of evidence is abuse of discretion." *Hughes v. State,* 90 So. 3d 613, 631 (¶53) (Miss. 2012).

¶4. The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. But a person has no standing to complain of a search or seizure of property that he has

3

abandoned. *United States v. Quiroz-Hernandez,* 48 F.3d 858, 864 (5th Cir. 1995) (citation omitted). The abandonment question is one of intent, primarily "whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." *United States v. Williams,* 569 F.2d 823, 826 (5th Cir. 1978) (citation omitted). Further, "intent may be inferred from words spoken, acts done, and other objective facts . . . . All relevant circumstances existing at the time of the alleged abandonment should be considered." *United States v. Colbert,* 474 F.2d 174, 176 (5th Cir. 1973) (en banc).

¶5.     In *United States v. Edwards* 441 F.2d 749, 751 (5th Cir. 1971*)*, the Fifth Circuit held that a defendant abandoned his vehicle, and therefore had no Fourth Amendment protection in regard to the vehicle, when he left his keys in the ignition and fled on foot from the police. The defendant, Edwards, jumped out of his car during a high-speed chase. *Id*. at 750. The police chased Edwards but were unsuccessful in catching him. *Id*. Afterwards, the police searched the trunk of his car and discovered untaxed whiskey. *Id*. The Fifth Circuit ruled Edwards's actions constituted abandonment. *Id*.; *cf. States v. Smith*, 648 F.3d 654, 659 (8th Cir. 2011) (finding that the defendant abandoned the Cadillac in the Taco Bell drive-through lane when he fled on foot from the police); *State v. Branam*, 334 Mont. 457, 463 (Mont. 2006) (finding that the defendant's fleeing from the police and leaving an Escalade and its contents on the street constituted abandonment sufficient to justify having the car towed for impoundment).

4

¶6.     Similarly, in *United States v. Wolfe,* No. 91-8603, 983 F.2d 232 (5th Cir. 1993) (unpublished), the Fifth Circuit held the defendant abandoned his rental car.    We acknowledge that *Wolfe* was not selected for publication; the court determined that the case had no precedential value. *Id*. at *4. But we will address the facts in *Wolfe* because they are synonymous with the facts in this case.  In *Wolfe*, the officers saw five men gathered around an open trunk in a parking lot known for drug trafficking. *Id*. at *1.  The police asked the men who owned the vehicle, to which the men replied they did not know. *Id*. After noticing a rental-car sticker on the car, one of the officers called the rental company and discovered the identity of the renters, who were two of the five men questioned by the police. *Id*.  The police then searched the vehicle and recovered a .357 magnum pistol, which had been stolen in a burglary two weeks before. *Id*.  Wolfe was later indicted and found guilty at trial. *Id*. at *2. On appeal, Wolfe challenged the police's search of the rental car. *Id*.  The court stated that "where a driver walks away from a rental car, disclaims any knowledge of it to the police, and leaves the keys on the dashboard with the windows rolled down, . . . he has abandoned that car for Fourth Amendment purposes." *Id*. at *4.  The court found that Wolfe lacked standing because he abandoned the car; the court further noted that when Wolfe abandoned the car, he abandoned the contents of the car as well. *Id*.

¶7.     We find the facts of this case akin to the circumstances in *Edwards* and *Wolfe*.  Here, the imperative issue is whether Green's actions and the surrounding facts indicate that he abandoned the car.  The police had a warrant for Green's arrest for another crime.  When Green saw the police officers, he eased away from the vehicle, threw the keys to the ground,

5

and ran towards some nearby woods. Based on Green's actions and the relevant circumstances, we agree with the trial judge's determination that Green abandoned the vehicle. As a result, Green had no Fourth Amendment protection in regard to the vehicle.

¶8. Even if Green had not abandoned the car and thus had standing to challenge the search, the search was reasonable as an inventory search. We acknowledge that "[w]arrantless searches and seizures are 'per se unreasonable unless they fall within a few narrowly defined exceptions.'" *United States v. Kelly,* 302 F.3d 291, 293 (5th Cir. 2002). One such exception is when law enforcement performs an inventory search as part of a bona fide "routine administrative caretaking function." *United States v. Skillern,* 947 F.2d 1268, 1275 (5th Cir. 1991); *see also South Dakota v. Opperman,* 428 U.S. 364, 368 (1976).

¶9. An inventory search must not be a "ruse for general rummaging" to find incriminating evidence. *Florida v. Wells,* 495 U.S. 1, 4 (1990); *O'Connell v. State*, 933 So. 2d 306, 309 (¶9) (Miss. Ct. App. 2005). "In order to prevent inventory searches from concealing such unguided rummaging, [the] Supreme Court has dictated that a single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront." *United States v. McKinnon*, 681 F.3d 203, 209 (5th Cir. 2012) (quotation omitted). "Thus, an inventory search of a seized vehicle is reasonable and not violative of the Fourth Amendment if it is conducted pursuant to standardized regulations and procedures that are consistent with (1) protecting the property of the vehicle's owner, (2) protecting the police against claims or disputes over lost or stolen property, and (3) protecting the police

6

from danger." *United States v. Lage,* 183 F.3d 374, 380 (5th Cir. 1999) (citing *United States v. Hope,* 102 F.3d 114, 116 (5th Cir.1996)); *see also Bolden v. State*, 767 So. 2d 315, 317 (¶9) (Miss. Ct. App. 2000). And the specified standardized regulations and procedures must "sufficiently limit the discretion of law enforcement officers to prevent inventory searches from becoming evidentiary searches." *United States v. Andrews*, 22 F.3d 1328, 1336 (5th Cir. 1994) (citation omitted).

¶10. "There is no requirement that the prosecution submit evidence of written procedures for inventory searches; testimony regarding reliance on standardized procedures is sufficient, as is an officer's unrebutted testimony that he acted in accordance with standard inventory procedures." *Lage*, 183 F.3d at 380. The officers' exercise of discretion does not violate the Fourth Amendment "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Colorado v. Bertine*, 479 U.S. 367, 375 (1987). "If there is no showing of bad faith or for the sole purpose of investigation, evidence discovered during an inventory search is admissible." *United States v. Gallo*, 927 F.2d 815, 819 (5th Cir. 1991).

¶11. After careful review, we find that the inventory search of Green's vehicle did not violate his Fourth Amendment rights. Agent Pirkey and Agent Washington performed the inventory search of Green's vehicle while waiting for the tow truck to arrive. Agent Pirkey testified that it is the Adams County Sheriff's Department's standard procedure to inventory the contents of a vehicle that is about to be impounded; he further stated that this policy is used to record any damage to the vehicle and release officers from any liability on

7

subsequent claims of damage or theft. *See Lattimore v. State*, 37 So. 3d 678, 684 (Miss. Ct. App. 2010) (finding it permissible for officers to conduct an inventory search of a vehicle when the circumstances require it to be impounded). Further, the record lacks any evidence of bad faith on the part of the officers in conducting the search. Accordingly, this issue has no merit.

### 2. Sufficiency of Evidence

¶12. A challenge of sufficiency of the evidence can be raised in a motion for a directed verdict, made at the end of the prosecution's case or at the close of all evidence, in a request for a peremptory instruction, or in a motion for a judgment notwithstanding the verdict. *Higgins v. State,* 725 So. 2d 220, 224 (¶22) (Miss. 1998). Here, Green made an unsuccessful motion for a directed verdict at the close of the prosecution's case. And he failed to renew the motion at the conclusion of all the evidence. "If a defendant puts on evidence in his own defense after the denial of his motion for a directed verdict, he waives his challenge to the sufficiency of the State's evidence up to that point." *Robinson v. State*, 749 So. 2d 1054, 1058-59 (¶13) (Miss. 1999). Further, Green's post-trial motion did not challenge the sufficiency of the evidence. "It is well established that 'questions will not be decided upon appeal which were not presented to the trial court and that court given an opportunity to rule on them.'" *Neese v. State,* 993 So. 2d 837, 843 (¶12) (Miss. Ct. App. 2008) (citations omitted). Green concedes that this issue is procedurally barred from our consideration. Procedural bar notwithstanding, we find that this issue lacks merit.

¶13. The dissent employs Green's insufficiency-of-the-evidence argument to find that

8

"simultaneous possession of three weapons in this instance is insufficient to convict Green on all three counts." However, Green has never made that argument; he only argues that the evidence was insufficient for Count IV – trafficking of stolen firearms. At no point on appeal did Green or the State raise the issue of whether Mississippi Code Annotated section 97-37-5(1) allows for multiple convictions when weapons are possessed simultaneously by the defendant. In all the cases cited by the dissent, the issue of statutory interpretation in relation to double jeopardy had been presented squarely and fully briefed.

¶14.    As the dissent correctly notes, the interpretation of this section and its constitutional implications is an issue of first impression in Mississippi. Other states have differing interpretations of similar statutes. Also, the word "any" appears in other Mississippi criminal statutes, including, for instance, statutes dealing with offenses relating to child pornography. While we agree with the dissent that certain instances permit our Court to address the issue of double jeopardy as plain error, to do so using plain error in this specific instance would be inappropriate. We therefore decline to address the issue suggested by the dissent.

¶15. **THE JUDGMENT OF THE ADAMS COUNTY CIRCUIT COURT OF CONVICTION OF COUNTS I, II, AND III, POSSESSION OF A WEAPON BY A CONVICTED FELON, AND SENTENCE AS A HABITUAL OFFENDER OF TEN YEARS FOR EACH COUNT, TO RUN CONSECUTIVELY; AND COUNT IV, TRAFFICKING STOLEN FIREARMS, AND SENTENCE OF FIFTEEN YEARS TO RUN CONCURRENTLY TO THE SENTENCES IN COUNTS I, II, AND III, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ADAMS COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ROBERTS, CARLTON, MAXWELL AND JAMES, JJ., CONCUR. BARNES, J., DISSENTS WITH SEPARATE OPINION, JOINED BY ISHEE, J.**

9

**BARNES, J., DISSENTING:**

¶16.    While I agree with the majority that search of Green's car did not violate his Fourth Amendment rights, I find that imposing multiple convictions for the simultaneous possession of three weapons was plain error, requiring reversal and remand to the circuit court for vacation of two of the three convictions and corresponding sentences.

¶17.    In addition to his conviction for trafficking stolen firearms, Green was convicted for three counts of possession of a firearm by a convicted felon, under Mississippi Code Annotated section 97-37-5(1) (Supp. 2012), and sentenced to three consecutive ten-year terms of incarceration.  Section 97-37-5(1) states:

> It shall be unlawful for any person who has been convicted of a felony under the laws of this state, any other state, or of the United States *to possess any* firearm or any bowie knife, dirk knife, butcher knife, switchblade knife, metallic knuckles, blackjack, or any muffler or silencer for any firearm unless such person has received a pardon for such felony, has received a relief from disability pursuant to Section 925(c) of Title 18 of the United States Code, or has received a certificate of rehabilitation pursuant to subsection (3) of this section.

(Emphasis added).  The issue of whether this statute, which prohibits a convicted felon from possessing "any firearm," allows for multiple convictions when several weapons are possessed simultaneously is one of first impression for Mississippi.  However, other jurisdictions with similarly worded statutes have found that the use of the term "any" is ambiguous and its statutory construction must be interpreted in favor of the defendant.

¶18.    In *State v. Garris*, 663 S.E.2d 340 (N.C. Ct. App. 2008), Darrell Garris argued that North Carolina General Statute section 14-415.1(a), which prohibits "any person who has

10

been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any firearm or any weapon of mass death and destruction[,]" "does not provide for multiple convictions when several weapons are possessed simultaneously." *Garris*, 663 S.E. 2d. at 346. Garris, who was running from police, dropped a black plastic bag that contained a firearm, in addition to illegal drugs. Another firearm was found in a nearby trash can along the route that Garris ran while being chased. He was convicted for two counts of possession of firearm by a felon. Discussing the federal statute and relevant caselaw regarding the possession of a firearm by a felon,[1] the North Carolina Court of Appeals noted that caselaw "favor[ed] the imposition of a single punishment unless otherwise clearly provided by statute." *Id*. at 347. Applying that rationale to section 14-415.1(a), the appellate court determined that the term "any" in its statute was ambiguous, and provided "no indication that

---

[1] "[I]f Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses[.]" *Bell v. United States*, 349 U.S. 81, 84 (1955). Federal courts have consistently interpreted the federal felony-weapon-possession statute, 18 U.S.C. § 922(g) (2012), as allowing only a single conviction for multiple firearms possessed simultaneously. *See United States v. Cejas*, 761 F.3d 717, 730-31 (7th Cir. 2014) ("Our holdings that multiple § 922(g) firearm possession convictions and sentences violate double jeopardy where the defendant's possession of the same firearm is uninterrupted are premised on the fact that the unit of prosecution in § 922(g) cases is the gun possession itself; one gun (or several guns simultaneously) possessed one time sustains one conviction."); *United States v. Richardson*, 439 F.3d 421, 422 (8th Cir. 2006) ("Congress intended the 'allowable unit of prosecution' to be an incident of possession regardless of whether a defendant satisfied more than one § 922(g) classification, possessed more than one firearm, or possessed a firearm and ammunition."); *United States v. Berry*, 977 F.2d 915, 920 (5th Cir. 1992) (discussing § 922(g) and holding that "simultaneous convictions and sentences for the same criminal act violate[] the double jeopardy clause"); *and United States v. Hodges*, 628 F.2d 350, 352 (5th Cir. 1980) ("Congress did not intend . . . to make the firearms themselves the allowable units of prosecution, unless they were received at different times or stored in separate places.").

11

the North Carolina Legislature intended for [section] 14-415.1(a) to impose multiple penalties for a defendant's simultaneous possession of multiple firearms." Garris, S.E.2d at 348. Therefore, it concluded that the trial court's decision to convict Garris for two counts of felony weapon possession was error. *See also State v. Wiggins*, 707 S.E.2d 664, 672 (N.C. Ct. App. 2011) (finding that the defendant/felon's simultaneous possession of weapons that were utilized over a short period of time "constituted a single possessory offense rather then three separate possessory offenses").

¶19.    The Illinois Supreme Court has also supported this statutory construction to its statute prohibiting the possession of a weapon by a convicted felon, concluding that the term "any firearm" may be interpreted to "mean either the singular or the plural." *People v. Carter*, 821 N.E.2d 233, 237 (Ill. 2004). "Where a criminal statute is capable of two or more constructions, courts must adopt the construction that operates in favor of the accused." *Id.* (citation omitted). In *Carter*, the defendant was found guilty of four counts of unlawful possession of a weapon by a felon for simultaneous possession of two firearms and two rounds of ammunition. The *Carter* court decided that "in the absence of a specific statutory provision to the contrary, the simultaneous possession of two firearms and firearm ammunition constituted a single offense," and it reversed and remanded the judgment to the trial court with instructions to vacate three of the convictions. *Id*. at 238-40; *see also People v. Hamilton*, No. 1-12-0369, 2014 WL 3893271, *19 (Ill. App. Ct., Aug. 8, 2014) (applying the rationale in *Carter* to Illinois's "armed habitual criminal statute" and finding that "since the [defendant's] three armed habitual criminal convictions were based on the simultaneous

12

possession of three guns, only one conviction can stand and the other two must be vacated").

¶20.    Similarly, in *Hill v. State*, 711 So. 2d 1221, 1224-25 (Fla. Dist. Ct. App. 1998), the Florida District Court of Appeals held that "the prohibition against double jeopardy preclude[d] more than one conviction for the possession at the same time of multiple firearms by a convicted felon."  In its ruling, the court specifically addressed the use of the term "any firearm" in the corresponding statute and the ambiguity issues in interpreting such language;[2] *see also Davis v. State*, 96 So. 3d 1116, 1117 (Fla. Dist. Ct. App. 2012) (per curiam) (recognizing its holding in *Hill* and vacating three of defendant's four convictions for simultaneous possession of multiple firearms by a convicted felon, as violating double jeopardy).

¶21.    Mississippi Code Annotated section 97-37-5(1) states that it is "unlawful for any person who has been convicted of a felony under the laws of this state, any other state, or of the United States to possess *any* firearm[.]"  (Emphasis added).  This provision clearly contains the type of ambiguity warranting a statutory construction in favor of leniency and a finding that the simultaneous possession of multiple firearms by a convicted felon precludes multiple convictions.  In the present case, the three weapons were all found simultaneously and in the same location – the trunk of Green's car.

---

[2] *Compare to Taylor v. State*, 929 N.E.2d 912, 921 (Ind. Ct. App. 2010) (emphasizing that Indiana's statute, which states that "[a] serious violent felon who knowingly or intentionally possesses *a firearm* commits unlawful possession of *a firearm* by a serious violent felon," indicates the legislature's intent "to make each unlawful possession of one firearm by a serious violent felon a separate and independent crime") (emphasis added).

¶22. Although Green has not raised this particular argument, he did raise an insufficiency-of-the-evidence claim. Based on the foregoing authority, I find the simultaneous possession of three weapons in this instance is insufficient to convict Green on all three counts. Further, our supreme court has specifically determined that double jeopardy is a fundamental right that cannot be waived. *Rowland v. State*, 42 So. 3d 503, 508 (¶14) (Miss. 2010). A defendant's "fundamental constitutional right to be free from being prosecuted twice for the same offense" permits this Court to address this issue of double jeopardy as plain error. *Lyle v. State*, 987 So. 2d 948, 950 (¶9) (Miss. 2008) (citing *White v. State,* 702 So. 2d 107, 109 (Miss. 1997)).

¶23. Although the majority responds that neither Green nor the State raised the issue of whether section 97-37-5(1) allows for multiple convictions, Mississippi Rule of Evidence 103(d) clearly states: "Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court." Additionally, Mississippi Rule of Appellate Procedure 28(a)(3) states: "No issue not distinctly identified shall be argued by counsel, except upon request of the Court, but the Court may, at its option, notice a plain error not identified or distinctly specified." In *Flowers v. State*, 35 So. 3d 516, 517-18 (¶3) (Miss. 2010), our supreme court held that it was "appropriate" to exercise its authority to address plain error (whether the defendant's indictment for statutory rape was fatally defective), even though the defendant "did not object at trial, nor did he challenge [his indictment] on appeal."

14

> Under proper circumstances, this Court "has noted the existence of errors in trial proceedings affecting substantial rights of the defendants although they were not brought to the attention of the trial court or of this Court." *Grubb v. State*, 584 So. 2d 786, 789 (Miss. 1991). Generally, this Court will address issues on plain-error review only "when the error has impacted upon a fundamental right of the defendant." *Sanders v. State*, 678 So. 2d 663, 670 (Miss. 1996). We find that this is such a case where it is appropriate to exercise this Court's authority to address plain error.

*Flowers*, 35 So. 3d at 517-18 (¶3). In the present case, I find that it was plain error, and a violation of Green's fundamental right against double jeopardy, to convict and sentence Green for three separate counts of possession of "any" weapon by a convicted felon.

¶24. Consequently, I would reverse and remand to the circuit court with instructions to vacate two of the three convictions for possession of a weapon by a convicted felon and the corresponding sentences.

**ISHEE, J., JOINS THIS DISSENT.**

15